CLEVELAND BAR ASSOCIATION v. MORRISON.

[Cite as *Cleveland Bar Assn. v. Morrison,*
96 Ohio St.3d 52, 2002-Ohio-2991.]

(No. 2002–0317—Submitted April 10, 2002—Decided July 3, 2002.)

**Per Curiam.**

{¶ 1} In June 1999, Michael T. Vietti hired respondent, Harvey S. Morrison of Cleveland, Ohio, Attorney Registration No. 0015230, and paid him a $1,000 "suit fee" plus court costs of $100 to file suit against Angelo Benedetti, Inc. for sales commissions that Vietti claims he earned but was not paid while working for

Benedetti. Respondent was also to receive one-third of any recovery by Vietti after expenses and credit for the "suit fee."

{¶ 2} Respondent filed suit on behalf of Vietti in the Cuyahoga County Common Pleas Court. When the defendant in the suit sent interrogatories to respondent, he forwarded them to Vietti to answer. After Vietti returned the interrogatories to respondent with his handwritten answers, respondent said he would have the answers typed and submit the typewritten copy to Vietti for signature.

{¶ 3} Respondent did not send the typewritten responses to Vietti for his signature, and Vietti could not contact respondent despite numerous attempts to do so. In the meantime, the defendant in the lawsuit filed a motion for summary judgment, respondent did not reply on behalf of Vietti, and in May 2000 the court granted summary judgment in favor of the defendant.

{¶ 4} Respondent did not inform Vietti of the summary judgment motion, or his failure to respond, or the court's order granting the motion. In fact, when Vietti finally was able to speak with respondent in October 2000, respondent told Vietti that he would send the typewritten interrogatories immediately, leading Vietti to believe that his case was still pending when, in fact, judgment had been entered against him in May 2000.

{¶ 5} Vietti discharged respondent, and respondent returned the "suit fee" to Vietti.

{¶ 6} On August 13, 2001, relator, Cleveland Bar Association, filed a complaint charging that this conduct of respondent violated several Disciplinary Rules. Respondent answered, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court.

{¶ 7} Based on the stipulations of the parties, respondent's answer, and testimony received at a hearing on December 13, 2001, the panel found the facts as alleged and concluded that respondent's inaction and failure to keep Vietti informed of the status of his case violated DR 6–101(A)(3) (a lawyer shall not neglect an entrusted legal matter), 7–101(A)(2) (a lawyer shall not fail to carry out a contract of employment), and 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage his client during course of professional relationship).

{¶ 8} In mitigation, the panel found that respondent had not previously been subject to a disciplinary action during his 40 years of practice and that he admitted his misconduct and demonstrated true remorse for it. The panel recommended that respondent be suspended from the practice of law for six months with all six months stayed. The board adopted the findings, conclusions, and recommendation of the panel.

{¶ 9} Upon examination of the record, we adopt the findings, conclusions, and recommendation of the board. Respondent is hereby suspended from the practice of law in Ohio for a period of six months with the entire six months stayed. Costs are taxed to respondent.

Judgment accordingly.

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., dissents because he would stay a one-year suspension.

Donald Cybulski and Denise L. Platfoot, for relator.

Harvey S. Morrison, pro se.

OFFICE OF DISCIPLINARY COUNSEL *v.* LOMBARDI.

[Cite as *Disciplinary Counsel v. Lombardi,*
96 Ohio St.3d 54, 2002-Ohio-2990.]

(No. 2002–0325—Submitted April 10, 2002—Decided July 3, 2002.)

Per Curiam.

{¶ 1} In April 1997, DeAnna Kidwell engaged respondent, Marcus M. Lombardi of Akron, Ohio, Attorney Registration No. 0042349, to represent her in matters involving the custody of her granddaughter. On July 14, 1997, at a hearing attended by respondent but not by Kidwell, the Summit County Juvenile

Court removed the granddaughter from Kidwell's custody because Kidwell had failed to follow the recommendations of the Summit County Children's Services Board ("CSB"), which had placed the granddaughter with Kidwell.

{¶ 2} After respondent informed Kidwell of the court's decision and told her that if she did not follow the court's order she could be held in contempt, Kidwell left the state with the granddaughter. Kidwell and the child remained out of state from October 1997 through March 1999, during which time respondent sent her a total of $130,000 for support. Respondent obtained the money from credit card loans, from his retirement funds, and from loans from his parents and friends. During this same period, respondent was in almost daily contact with Kidwell and personally met her on at least four occasions.

{¶ 3} Prior to and during these eighteen months, respondent was married and had four children. His gross income from his practice of law was between $30,000 and $40,000 a year, and that, together with his wife's income of $45,000 to $50,000, supported the family. In attempting to explain why he neglected his family and used his own money and money he borrowed from others to support Kidwell, respondent said that he believed that Kidwell's granddaughter had been sexually abused while in her mother's custody and that if they returned to Ohio, the child would be returned to its mother. He said that he became emotionally involved in the granddaughter's case. There was no romantic relationship between respondent and Kidwell.

{¶ 4} In March 1999, Kidwell was arrested in Pennsylvania. When she was returned to Summit County and incarcerated, respondent raised $20,000 to post a $200,000 bond on her behalf.

{¶ 5} Kidwell pleaded not guilty to charges of kidnapping and interference with custody, and respondent defended her at trial. In June 1999, Kidwell terminated respondent's representation and obtained other counsel, and respondent withdrew from the case. In August 1999, Kidwell pleaded guilty to interference with custody, and the kidnapping charge was dismissed.

{¶ 6} In September 1999, Kidwell was fined and sentenced to serve five years of community control sanctions. She violated the conditions of those sanctions and in December 1999 was sentenced to a year in prison.

{¶ 7} In August 1997, respondent, acting as custodian and cocounsel, settled a personal-injury case for his minor son, Nathan. He deposited the settlement check in his client trust account, paid cocounsel from the one-third contingency he was taking in the case, and loaned most of the son's settlement funds to Kidwell. Although respondent and his wife agreed that respondent should undertake the case for his son, respondent did not obtain probate court approval for his retention as his son's counsel or for his fee agreement with his son, nor did he

obtain court approval of either the settlement or the disbursement of the settlement proceeds.

{¶ 8} Pursuant to an agreement in his divorce proceedings, respondent established an account for his son and returned the money he owed to him in the fall of 2000.

{¶ 9} On April 9, 2001, relator, Disciplinary Counsel, filed a complaint charging that respondent's conduct violated several provisions of the Code of Professional Responsibility. Respondent answered, and the matter was referred to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court.

{¶ 10} Based on the stipulations of the parties and evidence received at a hearing on October 22, 2001, the panel concluded that by assisting Kidwell while knowing that his assistance would enable her to evade a court order, respondent had violated DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 5–103(B) (while representing a client in connection with contemplated or pending litigation a lawyer shall not advance or guarantee financial assistance to the client except expenses and costs of the litigation with repayment contingent on the outcome of the matter), and 7–102(A)(7) (a lawyer shall not counsel or assist a client in conduct that the lawyer knows to be illegal or fraudulent). The panel further found that by transferring his son's settlement funds to Kidwell, by failing to obtain the appropriate probate court approvals, and by delaying repaying money to his son's account, respondent violated DR 6–101(A)(3) (a lawyer shall not neglect an entrusted legal matter) and 9–102(B)(4) (a lawyer shall promptly deliver to the client funds or property to which the client is entitled).

{¶ 11} The panel received mitigation evidence from character witnesses, and noted that respondent had no prior disciplinary complaints filed against him and that he had cooperated in the investigation. The panel further found that although respondent's explanations furnished understandable reasons for his conduct, they did not explain the magnitude of his financial assistance to Kidwell. Despite respondent's present employment as a public defender and the panel's recognition that he currently provides a valuable service to his clients and the community, the panel believed that because he had assisted a client in violating the law, respondent should be suspended for a definite period. The panel recommended that respondent be suspended from the practice of law for two years with eighteen months stayed.

PFEIFER, J., dissents because he would stay the entire two-year suspension.

COOK, J., not participating.

---

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, First Assistant Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Charles W. Kettlewell and Charles J. Kettlewell, for respondent.