[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 54.]

OFFICE OF DISCIPLINARY COUNSEL *v*. LOMBARDI.

[Cite as *Disciplinary Counsel v. Lombardi*, 2002-Ohio-2990.]

*Attorneys at law—Misconduct—Two-year suspension with eighteen months stayed—Engaging in conduct prejudicial to the administration of justice—Advancing or guaranteeing financial assistance to client while representing client in connection with contemplated or pending litigation—Counseling or assisting client in illegal or fraudulent conduct—Neglect of an entrusted legal matter—Failing to promptly deliver funds or property to which client is entitled.*

(No. 2002-0325—Submitted April 10, 2002—Decided July 3, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 01-37.

―――――――――――

PER CURIAM.

{¶1} In April 1997, DeAnna Kidwell engaged respondent, Marcus M. Lombardi of Akron, Ohio, Attorney Registration No. 0042349, to represent her in matters involving the custody of her granddaughter. On July 14, 1997, at a hearing attended by respondent but not by Kidwell, the Summit County Juvenile Court removed the granddaughter from Kidwell's custody because Kidwell had failed to follow the recommendations of the Summit County Children's Services Board ("CSB"), which had placed the granddaughter with Kidwell.

{¶2} After respondent informed Kidwell of the court's decision and told her that if she did not follow the court's order she could be held in contempt, Kidwell left the state with the granddaughter. Kidwell and the child remained out of state from October 1997 through March 1999, during which time respondent sent her a total of $130,000 for support. Respondent obtained the money from credit card

loans, from his retirement funds, and from loans from his parents and friends. During this same period, respondent was in almost daily contact with Kidwell and personally met her on at least four occasions.

{¶3} Prior to and during these eighteen months, respondent was married and had four children. His gross income from his practice of law was between $30,000 and $40,000 a year, and that, together with his wife's income of $45,000 to $50,000, supported the family. In attempting to explain why he neglected his family and used his own money and money he borrowed from others to support Kidwell, respondent said that he believed that Kidwell's granddaughter had been sexually abused while in her mother's custody and that if they returned to Ohio, the child would be returned to its mother. He said that he became emotionally involved in the granddaughter's case. There was no romantic relationship between respondent and Kidwell.

{¶4} In March 1999, Kidwell was arrested in Pennsylvania. When she was returned to Summit County and incarcerated, respondent raised $20,000 to post a $200,000 bond on her behalf.

{¶5} Kidwell pleaded not guilty to charges of kidnapping and interference with custody, and respondent defended her at trial. In June 1999, Kidwell terminated respondent's representation and obtained other counsel, and respondent withdrew from the case. In August 1999, Kidwell pleaded guilty to interference with custody, and the kidnapping charge was dismissed.

{¶6} In September 1999, Kidwell was fined and sentenced to serve five years of community control sanctions. She violated the conditions of those sanctions and in December 1999 was sentenced to a year in prison.

{¶7} In August 1997, respondent, acting as custodian and cocounsel, settled a personal-injury case for his minor son, Nathan. He deposited the settlement check in his client trust account, paid cocounsel from the one-third contingency he was taking in the case, and loaned most of the son's settlement funds to Kidwell.

Although respondent and his wife agreed that respondent should undertake the case for his son, respondent did not obtain probate court approval for his retention as his son's counsel or for his fee agreement with his son, nor did he obtain court approval of either the settlement or the disbursement of the settlement proceeds.

{¶8} Pursuant to an agreement in his divorce proceedings, respondent established an account for his son and returned the money he owed to him in the fall of 2000.

{¶9} On April 9, 2001, relator, Disciplinary Counsel, filed a complaint charging that respondent's conduct violated several provisions of the Code of Professional Responsibility. Respondent answered, and the matter was referred to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court.

{¶10} Based on the stipulations of the parties and evidence received at a hearing on October 22, 2001, the panel concluded that by assisting Kidwell while knowing that his assistance would enable her to evade a court order, respondent had violated DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 5-103(B) (while representing a client in connection with contemplated or pending litigation a lawyer shall not advance or guarantee financial assistance to the client except expenses and costs of the litigation with repayment contingent on the outcome of the matter), and 7-102(A)(7) (a lawyer shall not counsel or assist a client in conduct that the lawyer knows to be illegal or fraudulent). The panel further found that by transferring his son's settlement funds to Kidwell, by failing to obtain the appropriate probate court approvals, and by delaying repaying money to his son's account, respondent violated DR 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter) and 9-102(B)(4) (a lawyer shall promptly deliver to the client funds or property to which the client is entitled).

{¶11} The panel received mitigation evidence from character witnesses, and noted that respondent had no prior disciplinary complaints filed against him

and that he had cooperated in the investigation. The panel further found that although respondent's explanations furnished understandable reasons for his conduct, they did not explain the magnitude of his financial assistance to Kidwell. Despite respondent's present employment as a public defender and the panel's recognition that he currently provides a valuable service to his clients and the community, the panel believed that because he had assisted a client in violating the law, respondent should be suspended for a definite period. The panel recommended that respondent be suspended from the practice of law for two years with eighteen months stayed.

{¶12} The board adopted the findings, conclusions, and recommendation of the panel.

{¶13} On review of the record, we adopt the findings, conclusions, and recommendation of the board. Respondent is hereby suspended from the practice of law for two years with eighteen months stayed. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents because he would stay the entire two-year suspension.

COOK, J., not participating.

————————————

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, First Assistant Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Charles W. Kettlewell and Charles J. Kettlewell, for respondent.

————————————