[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 101.]

LAKE COUNTY BAR ASSOCIATION *v*. SPEROS.

[Cite as *Lake Cty. Bar Assn. v. Speros*, 1995-Ohio-205.]

*Attorneys at law—Misconduct—Six-month suspension—Conduct involving fraud, deceit, dishonesty, or misrepresentation—Knowingly making a false statement of law or fact in the representation of a client.*

(No. 94-535—Submitted April 5, 1995—Decided August 16, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-06.

———————————

{¶ 1} In a complaint filed on February 16, 1993, relator, Lake County Bar Association, charged respondent, James M. Speros of Concord, Ohio, Attorney Registration No. 0014350, with having violated, inter alia, DR 1-102(A)(4) (conduct involving fraud, deceit, dishonesty, or misrepresentation) and 7-102(A)(5) (knowingly making a false statement of law or fact in the representation of a client). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on June 14, 1993.

{¶ 2} The parties stipulated to the facts and misconduct charged in the complaint as follows:

"1. [Respondent] is an attorney at law, having been licensed and authorized to practice in all courts and agencies of the State of Ohio in 1980.

"2. [Respondent] represented the Honorable Dennis M. Callahan, Judge of the Willoughby Municipal Court, in an action styled: State ex rel. GMS Management Company vs. Dennis M. Callahan, Judge, Case No. 90-76, in the Supreme Court of Ohio.

"3. The filing referenced in the preceeding [sic, preceding] item was an appeal originating from the Eleventh District, Ohio Court of Appeals.

"4. On or about August 7, 1990, Respondent caused to be filed in the aforementioned action a Motion to Reinstate Appeal.

"5. On or about August 4, 1990, Respondent prepared an affidavit in support of the aforementioned Motion to Reinstate Appeal and signed the same as 'affiant' and also signed thereto the name of A. Lynne Timpeiro as 'notary.' At the time in question, the aforesaid A. Lynne Timpeiro was employed as a secretary by the law firm by which Respondent was employed; however, Respondent did not have her specific authority to sign her name as 'notary' on the occasion in question.

"6. The affidavit prepared by Respondent contained information which he knew to be false, misleading, incorrect and inaccurate in that it suggested to the court that his failure to file a brief in the above referenced case in a timely manner was the result of clerical error rather than inattention on his part.

"7. The conduct of Respondent in preparing, notarizing, and submitting the aforementioned affidavit in support of the Motion to Reinstate Appeal constitutes 'misconduct' as defined in Section 6 of Rule 5 [sic., V] of the Rules for the Government of the Bar of Ohio in that such conduct involves dishonesty or misrepresentation in DR 1-102 and also involves the knowing use of a false statement of fact in representation of a client as referenced in DR 7-102."

{¶ 3} The panel found that respondent had violated DR 1-102(A)(4) and 7-102(A)(5), as charged and admitted. In recommending a sanction for this misconduct, the panel considered respondent's forthwright confession of wrongdoing, his cooperation, and that he had no history of disciplinary action. The panel also took into account (1) the testimony of a common pleas court judge, two municipal court judges, one of whom was Judge Callahan, and a former municipal and common pleas court judge; (2) testimony or correspondence from various local attorneys; (3) testimony from a high school principal and a college professor and veteran county commissioner; and (4) correspondence from a common pleas court baliff. All expressed their confidence in respondent's integrity and competence,

and many knew of his false affidavit. In addition, the panel considered respondent's exemplary employment history prior to the event in issue, which included service as a federal judge's clerk, as Assistant Director and Chief Counsel for the Ohio Department of Insurance, and associations with two prominent law firms.

{¶ 4} In mitigation of his misconduct, respondent also submitted evidence to substantiate that he had been diagnosed with recurrent major depression shortly after having filed the false affidavit in the Callahan case . According to the report of Dr. Daniel J. Rapport, the Director of the Outpatient Clinic for the Mood Disorders Program of University Hospitals of Cleveland, Case Western Reserve School of Medicine, respondent had been experiencing increasing symptoms of melancholia, including persistent suicidal ideation, pervasive sadness, apathy and abulia (the inability to motivate oneself), among other symptoms. The report indicated that respondent had subsequently responded well to medication and psychotherapy, and that his prognosis is good; however, respondent continues on medication indefinitely, as he is at risk of relapse and future episodes of severe depression.

{¶ 5} Respondent testified, consistently with Dr. Rapport's report, that work-related stress contributed significantly to the depression he developed in the fall of 1990. He filed the false affidavit just after he had successfully concluded the defense of a client in an overwhelming class action suit in an antitrust case and in the midst of an otherwise demanding workload. He was later discharged by his law firm upon the filing of the grievance herein. Respondent now concedes that he, alone, was responsible for his failure to file the brief in support of his motion to reinstate the appeal in the Callahan action. He also acknowedges that he continued to blame his clerical staff when, upon the instruction of a senior partner, he confronted his client, Judge Callahan, to explain his wrongdoing. Respondent ultimately confessed his complete responsibility to the judge approximately one

month before the panel hearing, and the judge still appeared to commend respondent's good character.

{¶ 6} Relator suggested that respondent receive a six-month suspension from the practice of law; respondent urged dismissal of the cause. The panel recommended that respondent be suspended from the practice of law for six months. The board adopted the panel's report, including its findings of fact, conclusions of law, and recommendation.

––––––––––––––––––––

*Karen D. Lawson* and *Glenn E. Forbes*, for relator.

*John J. Hurley, Jr.*, for respondent.

––––––––––––––––––––

**Per Curiam.**

{¶ 7} We have reviewed the record and concur in the board's findings that respondent violated DR 1-102(A)(4) and 7-102(A)(5). We also concur in the sanction recommended by the board and, thus, decline to impose the public reprimand now urged in respondent's objections.

{¶ 8} During oral argument, respondent claimed that his misconduct was most analogous to the disciplinary infractions committed in Disciplinary Counsel v. Schumann (1994), 71 Ohio St.3d 101, 642 N.E.2d 347, and Disciplinary Counsel v. Gwyn (1994), 71 Ohio St.3d 8, 640 N.E.2d 1141, in which we publicly reprimanded attorneys for their violations of DR 1-102(A)(4). We disagree. The attorney in Schumman placed his client's signature on an affidavit of expenses, notarized the signature, and filed the affidavit in court without his client's consent; but, at least, the information within the affidavit was apparently true. In Gwyn, the attorney neglected his client's case in violation of DR 6-101(A)(3), misrepresented the status of the case, and then fabricated documents to conceal his inaction; however, the misconduct was not compounded by the filing of these fabricated documents in court.

**{¶ 9}** Respondent calls to our attention several other cases in which we issued only public reprimands for an attorney's deception of a client, and these cases may imply that we view this misconduct as a minor transgression. We do not. Dishonesty toward a client, whose interests are the attorney's duty to protect, is reprehensible. And, as we continue to see such violations of DR 1-102(A)(4), we recognize that this misconduct may hereafter require more severe discipline than we have previously imposed.

**{¶ 10}** But, distressed as we are by any attorney's dishonesty toward a client, we find greater evil in an attorney's deliberate attempt to deceive a court while under oath. That attorney perpetrates a fraud upon the judiciary and a corresponding, surreptitious fraud upon his or her unsuspecting client. Cf. Disciplinary Counsel v. Heffernan (1991), 58 Ohio St.3d 260, 261, 569 N.E.2d 1027, 1028 (Failure to reveal a client's fraud upon a court is "a serious breach of duty for which a public reprimand is not an adequate sanction."). This is the misconduct with which we are faced here, and it exists in none of the cases respondent cites to establish a comparable violation of DR 1-102(A)(4).

**{¶ 11}** For example, in Bar Assn. of Greater Cleveland v. Haffner (1977), 52 Ohio St.2d 41, 6 O.O.3d 155, 368 N.E.2d 845, we publicly reprimanded an attorney who falsely alleged in a complaint against his former client that he had paid certain medical expenses on her behalf. That attorney later paid the client's expenses after he received a default judgment, and he never attested to his allegations under oath. By contrast, respondent attested by forgery to a prevarication in the representation of his client and without hope of it ever becoming true.

**{¶ 12}** In Cincinnati Bar Assn. v. Wang (1991), 59 Ohio St.3d 67, 570 N.E.2d 274, we publicly reprimanded an attorney who falsely certified that an employee of his law firm earned a higher salary so that he and the employee could obtain a real estate loan. And, in Disciplinary Counsel v. Boughton (1991), 59 Ohio

St.3d 102, 570 N.E.2d 1100, we publicly reprimanded an attorney whose misrepresentation consisted of participating in the affairs of an insurance company not licensed and registered under the laws of Ohio or of any other state. These misrepresentations are also unlike respondent's false affidavit -- neither misrepresentation was directed to a court or made in the context of an attorney-client relationship.

{¶ 13} Finally, in Disciplinary Counsel v. Cordova (1993), 67 Ohio St.3d 25, 615 N.E.2d 1035, we publicly reprimanded an attorney for filing a fiduciary income tax return that incorrectly identified the name of an estate's executor. However, the circumstances of that case suggest, and even respondent seems to acknowledge, that the wrong executor's name was supplied more by inadvertence than by conscious deception. Respondent, on the other hand, plainly appreciated the deception he intended to practice upon this court.

{¶ 14} Of the cases cited by the parties, we find Disciplinary Counsel v. Lynch (1994), 71 Ohio St.3d 287, 643 N.E.2d 542, to be the most instructive. In Lynch, an attorney helped a client who was attempting to obtain a nursing license in Missouri by signing an affidavit in which he attested that the client had not been convicted of attempted rape. The attorney prepared the affidavit for filing with Missouri officials, even though he knew his client had pleaded guilty to that offense and had already served his sentence in a federal penitentiary. We suspended the attorney's license for six months because his affidavit on behalf of the client was nothing more than a sworn lie.

{¶ 15} Respondent's affidavit was also a sworn lie. Worse yet, he filed the affidavit in court, bearing the forged signature of a notary. His misconduct is thus more grievous than was the attorney's in Lynch, and, for that reason, might have justified a more severe sanction. Accord Stark Cty. Bar Assn. v. Miller (1989), 44 Ohio St.3d 134, 541 N.E.2d 607 (fraud perpetrated upon court by probating of revoked will warranted one-year suspension of attorney's license). However,

respondent's depression, his lack of any prior discipline, his confession of wrongdoing and his cooperation, as well as the appeal of his character witnesses and the absence of any prejudice from the perspective of his client in the Callahan action, convinced the board, and now persuade us, not to impose more stringent disciplinary measures than the recommended six-month suspension.

{¶ 16} Therefore, we accept the sanction recommended by the board. Respondent is hereby suspended from the practice of law in Ohio for a period of six months. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____