DISCIPLINARY COUNSEL *v.* KING.

**[Cite as *Disciplinary Counsel v. King*,
103 Ohio St.3d 438, 2004-Ohio-5470.]**

</div>

(No. 2004–0495—Submitted July 20, 2004—Decided October 27, 2004.)

**Per Curiam.**

{¶ 1} Respondent, James C. King of Lima, Ohio, Attorney Registration No. 0000774, was admitted to the Ohio bar in 1967. In January 1990, we suspended respondent from the practice of law in Ohio for one year for violating DR 1–102(A)(4) (forbidding conduct involving dishonesty, fraud, deceit, or misrepresentation). *Allen Cty. Bar Assn. v. King* (1990), 48 Ohio St.3d 8, 548 N.E.2d 238. That case arose from respondent's federal conviction for filing false individual income tax returns in 1984 and 1985. Id. In February 1991, we reinstated respondent to the practice of law in Ohio. *Allen Cty. Bar Assn. v. King* (1991), 58 Ohio St.3d 601, 567 N.E.2d 985.

{¶ 2} In February 1996, we suspended respondent from the practice of law in Ohio for six months for violating DR 6–101(A)(3) (forbidding neglecting an entrusted legal matter) and 1–102(A)(4). *Disciplinary Counsel v. King* (1996), 74 Ohio St.3d 612, 660 N.E.2d 1160. We found that respondent had neglected to refile a civil case and that he had repeatedly lied to his client in stating that he had refiled the case. In October 1996, we reinstated respondent to the practice of law in Ohio. *Disciplinary Counsel v. King* (1996), 77 Ohio St.3d 1202, 670 N.E.2d 1358.

{¶ 3} Shortly after being reinstated the second time, respondent was retained by a client to represent her regarding $350,000 she had invested through her brother-in-law in a limited partnership. Under the agreement, respondent charged a fee of one-third of all proceeds recovered from the client's brother-in-law in excess of the client's original $350,000 investment.

{¶ 4} On October 9, 1997, respondent filed a lawsuit on behalf of the client against her brother-in-law in the Allen County Court of Common Pleas. In the complaint, respondent alleged that his client's brother-in-law had committed fraud, breached his fiduciary duty, and breached a contract by inducing the client to invest $350,000 in the limited partnership. In September 1998, after the defendant moved for summary judgment, respondent voluntarily dismissed the complaint under Civ.R. 41(A).

{¶ 5} On January 6, 1999, respondent refiled the complaint, which was identical in all material respects to the October 1997 complaint. In April 1999, the defendant moved for summary judgment. The defendant served respondent with the motion as well as interrogatories and a request for production of documents. Respondent did not respond to the defendant's motion for summary judgment,

interrogatories, or request for production of documents within the time required in the court's scheduling order.

{¶ 6} On June 3, 1999, the common pleas court granted the defendant's motion for summary judgment. On June 4, 1999, respondent filed a Civ.R. 60(B) motion for relief from the June 3 summary judgment. On June 8, 1999, in a conference call with respondent and the defendant's attorney, the common pleas court indicated that it would likely grant respondent's Civ.R. 60(B) motion.

{¶ 7} On June 9, 1999, respondent conducted a previously scheduled meeting with his client, his client's boyfriend, and the boyfriend's lawyer. At the meeting, respondent did not inform his client or the other participants that the defendant had filed a motion for summary judgment, that the motion had been granted, that he had filed a Civ.R. 60(B) motion, or that the court had indicated that it was inclined to grant the Civ.R. 60(B) motion. When he was asked about the trial date, respondent stated that it would be continued because the case would require more time than the one-half day that had been reserved.

{¶ 8} On June 22, 1999, the court granted respondent's Civ.R. 60(B) motion and granted him additional time to respond to the defendant's motion for summary judgment. Respondent subsequently responded to the summary judgment motion. On October 21, 1999, the court of appeals reversed the court's June 22, 1999 granting of respondent's Civ.R. 60(B) motion and remanded the case for further proceedings. On November 10, 1999, the common pleas court entered summary judgment in favor of the defendant. When respondent eventually told his client that the adverse judgment had resulted from his failure to file a timely response to the defendant's motion for summary judgment, she fired respondent.

{¶ 9} In late 2000, the client filed a legal malpractice action against respondent and others in the common pleas court. In January 2001, relator, Disciplinary Counsel, filed a complaint against respondent for his conduct, but relator dismissed the complaint without prejudice pending resolution of the legal malpractice case. In September 2002, respondent paid his client $75,000 to settle the malpractice case. Because respondent did not have legal malpractice insurance when his client's claim arose, he paid the settlement amount himself.

{¶ 10} On April 14, 2003, relator filed a complaint charging respondent with violating certain Disciplinary Rules. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court heard the matter upon the testimony, exhibits, and stipulated facts of the parties. At the hearing, respondent claimed that he had not lied to his client and that he had decided not to disclose what had happened with the defendant's motion for summary judgment because he wanted to avoid embarrassment:

{¶ 11} "And I remember exactly what happened that day. No, I honest to God thought I had the problem fixed. And I didn't—you know, is it splitting hairs to

say I didn't tell her and then I—and because I didn't tell her, I didn't lie to her. * * * Is that a lie? I don't know. I thought I had the problem fixed and I wanted to avoid the embarrassment that was associated with that kind of disclosure."

{¶ 12} The panel found the facts as previously set forth and concluded that respondent's conduct violated DR 1–102(A)(4), 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), and 6–101(A)(3).

{¶ 13} The panel then considered aggravating and mitigating factors in accordance with Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel reviewed the aggravating factors of respondent's two previous disciplinary cases, his pattern of dishonesty, and his attempt to distinguish an omission from a lie.

{¶ 14} In mitigation, the panel noted respondent's cooperation in the disciplinary proceedings, his payment to settle the legal malpractice case, his remorse for his actions, and his good character and reputation in the legal community.

{¶ 15} For the sanction, relator recommended that respondent be suspended from the practice of law for two years, and respondent argued that a two-year suspension would be excessive. The panel recommended that respondent be suspended from the practice of law for two years, with the second year of the suspension stayed.

{¶ 16} The board further emphasized as a mitigating factor that respondent's conduct had been motivated by his altruism:

{¶ 17} "[A] review of the facts of this matter and Respondent's prior disciplinary cases evidences that Respondent's conduct has been motivated to a substantial degree by an altruistic desire to assist clients with significant legal problems. As an example, Respondent's ill-advised contingent fee contract with [his client] in the instant case entitled him to no compensation on the first $350,000 of recovery—bearing in mind that [her] original investment in [the limited partnership] was $350,000 and that [respondent] recommended acceptance of a $348,000 settlement offer, which would have entitled him to no compensation for his legal services. The panel concluded that in general [respondent] was not motivated by self-interest but out of a naïve, misplaced sense of noblesse oblige."

{¶ 18} The board adopted the panel's findings and conclusions but determined that the mitigating factors warranted a two-year suspension with 18 months stayed. The board further recommended that the costs of the proceedings be taxed to respondent.

{¶ 19} Relator objected to the board's recommended sanction, and respondent filed an answer brief.

{¶ 20} We agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), and 6–101(A)(3). But because we are persuaded that the aggravating factors outweigh the evidence of mitigation, we do not adopt the board's recommended sanction.

{¶ 21} In determining the appropriate sanction, we consider "the duties violated, the actual injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

{¶ 22} Respondent violated his duties to his client, DR 1–102(A)(4) and 6–101(A)(3), and to the legal system, DR 1–102(A)(5). Although respondent ultimately paid the client $75,000 to settle her legal malpractice case, he did so only after she sued him and relator filed its initial complaint against him.

{¶ 23} Moreover, as the board observed, respondent's misconduct was aggravated by not *one*, but *two* previous disciplinary cases. See Gov.Bar R. V(6)(C) ("Prior disciplinary offenses shall be considered as a factor that may justify an increase in the degree of discipline to be imposed for subsequent misconduct"); BCGD Proc.Reg. 10(B)(1)(a). Both of respondent's disciplinary cases involved similar misconduct—violations of DR 1–102(A)(4). In particular, in the second disciplinary case, respondent neglected to refile a complaint for a client and then repeatedly lied to the client that he had refiled it. *Disciplinary Counsel v. King*, 74 Ohio St.3d at 613, 660 N.E.2d 1160.

{¶ 24} As the Florida Supreme Court has held, a more severe sanction is warranted in these circumstances:

{¶ 25} " 'In rendering discipline, this Court considers the respondent's previous disciplinary history and increases the discipline where appropriate. *The Court deals more harshly with cumulative misconduct than it does with isolated misconduct. Additionally, cumulative misconduct of a similar nature should warrant an even more severe discipline than might dissimilar conduct.*' " *Florida Bar v. Temmer* (Fla.1999), 753 So.2d 555, 559, quoting *Florida Bar v. Bern* (Fla.1982), 425 So.2d 526, 528 (with emphasis added and citations omitted).

{¶ 26} Respondent argues that he "blends tough client advocacy with a sense that *one's word is his bond* in dealing with other counsel." (Emphasis added.) But as the board found, respondent's "own testimony attempting to distinguish an omission from a lie suggests he may still believe it appropriate to withhold information from his clients, notwithstanding his prior discipline."

{¶ 27} Respondent *did* lie to his client by advising her at the June 9, 1999 meeting that the trial date would be continued because the case required more than a half day when he knew that the trial date was not then scheduled because the court had granted the defendant's summary judgment motion. And we have

found attorneys guilty of violating DR 1–102(A)(4)—engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—by not informing clients of court action. See, e.g., *Columbus Bar Assn. v. Bowen* (1999), 87 Ohio St.3d 126, 717 N.E.2d 708. Respondent's continued attempts to distinguish his actions indicate his refusal to appreciate the wrongfulness of his conduct, which is an additional aggravating factor. BCGD Proc.Reg. 10(B)(1)(g).

{¶ 28} Furthermore, we do not agree with the board that respondent's "altruistic desire to assist clients with significant legal problems" constitutes a mitigating factor. Although respondent's initial decision to take the case may have been motivated by such noble interests, his misconduct was not so motivated. In fact, respondent admitted during the panel hearing that he failed to advise his client of the status of her case because of potential "embarrassment" to him. By so acting, respondent placed his own interests above his client's. Therefore, respondent's conduct did not evidence, as he contended at oral argument, his lack of a dishonest or selfish motive. The fact that his initial decision to take a case that other attorneys had declined might have been altruistic did not thereby insulate him from consequences of any misconduct he committed thereafter.

{¶ 29} As we previously cautioned respondent in his prior disciplinary case, " 'Dishonesty toward a client, whose interests are the attorney's duty to protect, is reprehensible.' " *Disciplinary Counsel v. King*, 74 Ohio St.3d at 614, 660 N.E.2d 1160, quoting *Lake Cty. Bar Assn. v. Speros* (1995), 73 Ohio St.3d 101, 104, 652 N.E.2d 681. And "[a]n actual suspension from the practice of law is the general sanction for an attorney that engages in a course of conduct that violates DR 1–102(A)(4)." *Disciplinary Counsel v. Brumbaugh*, 99 Ohio St.3d 65, 2003-Ohio-2470, 788 N.E.2d 1076, ¶ 13.

{¶ 30} Therefore, respondent's continued violation of DR 1–102(A)(4), despite two previous disciplinary cases where he violated that same rule, warrants a harsher sentence than the two-year suspension with 18 months stayed recommended by the board.

{¶ 31} Nevertheless, we do not agree with relator that a two-year actual suspension is warranted. As we recently observed in *Mahoning Cty. Bar Assn. v. Reid*, 102 Ohio St.3d 402, 2004-Ohio-3121, 811 N.E.2d 542, ¶ 12, "the record lacks clear and convincing evidence that [respondent's] misconduct harmed" his client. Other attorneys had declined to take the client's case because they believed that any applicable statute of limitations had expired. In fact, the court of appeals emphasized in its October 1999 judgment that "at the time of the trial court's grant of Civ.R. 60(B) relief the record contained no evidence or even an allegation which could be construed to rebut [the] statute of limitations arguments." *Cassie v. Cassie* (Oct. 21, 1999), 3d Dist. No. 1–99–60, 1999 WL 966123

at 7, * 3. Despite the questionable merits of his client's underlying claim, respondent paid her $75,000 to settle her legal malpractice case against him.

{¶ 32} When this lack of evidence of actual injury caused by respondent's misconduct is coupled with his remorse, cooperative attitude throughout the disciplinary proceeding, and general reputation for good character in the legal community, we are persuaded that the panel's recommendation of a two-year suspension with one year stayed is appropriate. By imposing this harsher sanction, we advance the purpose of sanctions in attorney discipline proceedings—"to protect the public and the administration of justice from lawyers who have not discharged, and will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." American Bar Association Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend. 1992), Standard 1.1. Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years, with the second year stayed. Costs are taxed to respondent.

<div align="right">Judgment accordingly.</div>

RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., and O'CONNOR, J., dissent.

---

**O'CONNOR, J., dissenting.**

{¶ 33} I respectfully dissent because I would impose an actual two-year suspension, as advocated by relator. Alternatively, I suggest that respondent's history of misconduct warrants mandating that he maintain professional liability insurance during the stayed portion of his suspension.

{¶ 34} The board found that respondent "has developed or is on the verge of developing a pattern of dishonesty that could materially endanger the public." My conclusion is less equivocal. Since 1990, respondent has thrice violated DR 1–102(A)(4), in addition to violating another Disciplinary Rule; he has repeatedly lied to clients regarding the status of their legal claims; and, during the present disciplinary proceedings, he indicated that withholding information from a client is distinguishable from a lie. These factors demonstrate that a pattern of dishonesty already exists.

{¶ 35} Moreover, I determine that the absence of discernible harm to respondent's client does not mitigate his misconduct enough to warrant less than a two-year actual suspension. In *Mahoning Cty. Bar Assn. v. Reid,* 102 Ohio St.3d 402, 2004-Ohio-3121, 811 N.E.2d 542, ¶ 9, which the majority cites to support mitigation, the respondent had no prior disciplinary infractions and "lacked a dishonest

motive." That case is clearly distinguishable from the present case, in which respondent has three prior violations of Disciplinary Rules and was repeatedly and intentionally dishonest with his client. As the majority noted, and as we wrote in respondent's 1996 disciplinary case, " 'Dishonesty toward a client * * * is reprehensible.' " *Disciplinary Counsel v. King* (1996), 74 Ohio St.3d 612, 614, 660 N.E.2d 1160, quoting *Lake Cty. Bar Assn. v. Speros* (1995), 73 Ohio St.3d 101, 104, 652 N.E.2d 681. Repetitious and intentional dishonesty is even more so, and it is deserving of a commensurate response. A two-year suspension is appropriate.

{¶ 36} Further, I am troubled that respondent did not maintain professional liability insurance during the events that led to his present sanction. Considering respondent's history of disciplinary cases, prudence suggests that he and his prospective clients would be well served by his maintaining insurance. Therefore, in light of our decision to stay a portion of respondent's suspension, I suggest mandating that respondent maintain professional liability insurance in the minimum amount of $100,000 per occurrence and $300,000 in the aggregate during his stayed suspension. See *Cleveland Bar Assn. v. Perry* (1999), 87 Ohio St.3d 217, 718 N.E.2d 1276.

MOYER, C.J., concurs in the foregoing dissenting opinion.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Rayle, Matthews & Coon and Max E. Rayle, for respondent.