DISCIPLINARY COUNSEL *v.* FUMICH.

[Cite as *Disciplinary Counsel v. Fumich,*
116 Ohio St.3d 257, 2007-Ohio-6040.]

(No. 2007–0733—Submitted August 14, 2007—Decided November 15, 2007.)

---

**Per Curiam.**

{¶ 1} Respondent, William Mark Fumich Jr. of Westlake, Ohio, Attorney Registration No. 0022600, was admitted to the Ohio bar in 1976. The Board of Commissioners on Grievances and Discipline recommends that we impose a 12–month stayed suspension of respondent's license to practice law based on findings that he committed several disciplinary violations. On review, we adopt the board's findings of misconduct and recommended sanction.

{¶ 2} On June 15, 2006, relator, Disciplinary Counsel, filed a two-count amended complaint charging respondent with several violations of the Code of Professional Responsibility. Respondent stipulated to all the violations of the Disciplinary Rules charged in Count I and to one of the two violations charged in Count II. A panel of the board held a hearing on the complaint on February 22, 2007. Based on the stipulations and other evidence, the panel made findings of fact, conclusions of law, and a recommendation, which the board adopted.

## Stipulated Facts

### Count I

{¶ 3} In 1998, respondent was hired to probate the will of a relative, Janko Klepac. Shortly after Klepac's death, his daughters, Nada Bukszar and Danica Jelovic, asked respondent to review the circumstances that led to the amputation of Klepac's toe prior to his death. Respondent reviewed the matter and agreed to pursue a medical-malpractice action on behalf of the estate.

{¶ 4} In March 1999, respondent filed a medical-malpractice action seeking $500,000 in damages. According to a case-management order, respondent was required to submit a report of a medical expert showing the purported negligence. Despite his efforts, respondent was unable to find a medical expert willing to testify that substandard care was the cause of Klepac's gangrenous toe.

{¶ 5} In February 2002, the trial court granted summary judgment in favor of the defendants in the malpractice action. Respondent had not responded to the motions for summary judgment and took no further action in the case. Moreover, respondent never advised his clients that the case had been dismissed.

{¶ 6} In May 2004, Jelovic telephoned respondent to inquire about the status of the case. During this conversation, respondent did not inform Jelovic that the case had been dismissed in February 2002. On June 4, 2004, Jelovic again telephoned respondent and asked that he settle the case for $25,000. Rather than tell Jelovic that the case had been dismissed two years earlier, respondent told her that the case could be settled for $16,000.

{¶ 7} After Jelovic agreed to accept the $16,000 "settlement," respondent withdrew $16,000 from a personal retirement account and deposited that amount into his IOLTA account. On June 11, 2004, respondent wrote a check from his IOLTA account to Jelovic for $16,000. Respondent also had Jelovic execute a form authorizing respondent to close the case file.

### Count II

{¶ 8} Respondent represented Kathleen Neubig, his first cousin, on several legal matters. On July 26, 2005, Neubig sent a letter to respondent requesting all of her legal documents in respondent's possession. Respondent received the letter, but did not return any documents to Neubig.

## Stipulated Misconduct

{¶ 9} Respondent admitted and the board found that he had violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law), 6–101(A)(3) (neglecting an entrusted legal matter), 9–

102(A) (prohibiting a lawyer from depositing personal funds in law firm accounts), and 9–102(B)(4) (failing to promptly deliver client's property in lawyer's possession).

## Recommended Sanction

{¶ 10} In recommending a sanction, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 11} The board found no aggravating factors applicable to respondent's misconduct. See BCGD Proc.Reg. 10(B)(1)(a) to (i). In mitigation, the board found (1) the absence of a prior disciplinary record, (2) respondent's restitution to the Klepac estate, (3) respondent's cooperation in the disciplinary process, and (4) his excellent character and reputation. BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). The board further found that respondent acted without a dishonest or selfish motive relative to personal financial gain. See BCGD Proc.Reg. 10(B)(2)(b). The board also noted that respondent acknowledged the wrongful nature of his conduct and that he had not caused financial harm to his clients.

{¶ 12} The relator recommended that respondent be suspended from the practice of law for 12 months with six months stayed. Respondent requested a 12–month suspension with the entire suspension stayed. The panel recommended that respondent receive a 12–month suspension, all stayed. The board adopted the panel's recommendation.

## Review

{¶ 13} Respondent does not challenge the board's findings of misconduct or the recommended sanction. Relator, however, challenges the board's recommendation for a stay of the entire suspension. Relator contends that respondent's actions warrant an actual suspension from the practice of law, and it urges us to impose a 12–month suspension with only six months stayed.

{¶ 14} We have reviewed the board's record and its report, and we agree that respondent violated DR 1–102(A)(4), 1–102(A)(6), 6–101(A)(3), 9–102(A), and 9–102(B)(4). We also find that the board's recommended sanction is appropriate.

{¶ 15} A violation of DR 1–102(A)(4) usually requires an actual suspension from the practice of law for an appropriate period of time. *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237. We have held, however, that an abundance of mitigating evidence can justify a lesser sanction. *Dayton Bar Assn. v. Kinney* (2000), 89 Ohio St.3d 77, 78, 728 N.E.2d 1052 (attorney's misrepresentations to government agencies that did not harm clients or change outcome of representation warranted a six-month stayed suspension).

See also *Disciplinary Counsel v. Markijohn,* 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, and *Disciplinary Counsel v. Carroll,* 106 Ohio St.3d 84, 2005-Ohio-3805, 831 N.E.2d 1000.

{¶ 16} In this case, the mitigating evidence demonstrates that respondent has no prior disciplinary record, has fully cooperated in the disciplinary process, and has accepted responsibility for his wrongful conduct. The panel also received several letters attesting to his reputation, professionalism, and competence. Furthermore, respondent made restitution to the Klepac estate as part of a legal malpractice action against him. Moreover, although respondent lied to the Klepac estate clients by telling them that the case could be "settled," the clients received $16,000 from respondent even though an adverse judgment had already been entered against them. Thus, while we do not condone such dishonesty, respondent did not act with a motive to exploit his clients. See *Disciplinary Counsel v. Agopian,* 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 13 (attorney did not deliberately deceive in order to generate funds not earned or to collect for services not rendered). Cf. *Disciplinary Counsel v. Holland,* 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 21–22 (attorney acted with an exploitive motive by double-billing).

{¶ 17} We find that respondent's mitigating evidence weighs against imposing an actual suspension. Dishonesty toward a client in any form is misconduct, and respondent's conduct was a clear violation of DR 1–102(A)(4). However, we have consistently recognized that "in determining the appropriate length of the suspension and any attendant conditions, we must recognize that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53; see also *Ohio State Bar Assn. v. Weaver* (1975), 41 Ohio St.2d 97, 100, 70 O.O.2d 175, 322 N.E.2d 665.

{¶ 18} Accordingly, respondent is hereby suspended from the practice of law for 12 months with the entire suspension stayed on the condition that he commit no further misconduct during that term. If respondent violates the condition, the stay will be lifted and respondent will serve the entire term of actual suspension. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR, J., dissent.

----------

**MOYER, C.J., dissenting.**

{¶ 19} Attorney dishonesty is a serious problem, one that we have chosen to combat with real suspensions from the practice of law: "[W]hen an attorney engages in a course of conduct that violates DR 1–102(A)(4), the attorney *will be actually suspended from the practice of law* for an appropriate period of time." (Emphasis added.) *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 191, 658 N.E.2d 237. In imposing a 12–month stayed suspension, the majority suggests that the mitigating evidence warrants an exception to this general rule. Because I cannot overlook the serious dishonesty committed by respondent, I respectfully dissent.

{¶ 20} Respondent was faced with a difficult situation. Unable to find a required expert witness to support his clients' medical-malpractice case, he knew that the claim would fail. The right thing to do would have been to call his clients and apprise them of the bad news. Instead, respondent did nothing. When the case was dismissed after he chose not to respond to a motion to summary judgment, he should have informed his clients of this new development. Instead, respondent gave his clients no information for over two years. When they finally sought a status update, he should have told them the truth about their case. Instead, respondent fabricated a story, telling them that the case was ongoing and that he could settle it for them. He ultimately gave them $16,000 of his own money, but funneled it through his IOLTA account to continue the illusion he had crafted.

{¶ 21} Exceptions from the general suspension rule may be warranted when an "abundance of mitigating evidence" requires a different result. See *Disciplinary Counsel v. Markijohn,* 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8. The type of evidence needed to escape suspension is not present here.

{¶ 22} While I respect the fact that respondent has no prior disciplinary record, fully cooperated in the proceedings, and accepted responsibility for his actions, these factors are not enough on their own to overcome an extended pattern of unabashed dishonesty toward a client. See *Disciplinary Counsel v. Rooney,* 110 Ohio St.3d 349, 2006-Ohio-4576, 853 N.E.2d 663, ¶ 9–13. Likewise, the fact that respondent did not seek to financially exploit his clients does not warrant an exception. Dishonesty to cover one's embarrassment of the truth is still unacceptable; dishonesty is dishonesty, regardless of the motive. See *Disciplinary Counsel v. King,* 103 Ohio St.3d 438, 2004-Ohio-5470, 816 N.E.2d 1040, ¶ 28. The absence of financially motivated deception certainly warrants a lesser actual suspension, but it does not eliminate the requirement altogether.

{¶ 23} Therefore, I see no evidence to support a fully stayed sanction but also recognize the mitigating factors favoring respondent. Weighing his multiyear course of dishonest behavior culminating in a fabricated settlement against his previously unblemished record, full cooperation in these proceedings, and accep-

tance of responsibility as well as the lack of financial harm to his clients, I would suspend him from the practice of law for 12 months with six months stayed.

O'CONNOR, J., concurs in the foregoing opinion.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., C. David Paragas, and Ronald L. House, for respondent.