DAYTON BAR ASSOCIATION *v*. ANDREWS.

[Cite as *Dayton Bar Assn. v. Andrews,* 105 Ohio St.3d 453, 2005-Ohio-2696.]

(No. 2004–2080—Submitted February 16, 2005—Decided June 15, 2005.)

---

**Per Curiam.**

{¶ 1} Respondent, Charles G. Andrews, of Dayton, Ohio, Attorney Registration No. 0037476, was admitted to the Ohio bar in 1980. On June 25, 1997, respondent was suspended from the practice of law for one year for committing several Disciplinary Rule violations, including neglecting the cases of four bankruptcy clients. See *Dayton Bar Assn. v. Andrews* (1997), 79 Ohio St.3d 109, 679 N.E.2d 1093. Respondent served this suspension and complied with all requirements for his reinstatement, including conditions ordered to ensure that respondent's depression was treated. Respondent was then reinstated on April 18, 2000, and placed on a one-year monitored probation. *Dayton Bar Assn. v. Andrews* (2000), 88 Ohio St.3d 1238, 727 N.E.2d 917.

{¶ 2} On October 6, 2003, relator, Dayton Bar Association, charged respondent with, among other misconduct, one count of professional neglect. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and issued findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

{¶ 3} Respondent, formerly a private practitioner and now an assistant public defender, stipulated to many facts alleged by relator. In June 2000, a client consulted respondent, asking him to help her husband of many years reduce his child-support payments. At the time, over $700 per month was being withheld from her husband's paycheck to pay for arrearages accumulated before his children were emancipated. The husband had recently learned of his forthcoming layoff, and the couple feared the consequences of his being unable to continue making child-support payments.

{¶ 4} At the second consultation, respondent learned that the husband owed a very large amount for delinquent child-support payments—approximately $99,000. Respondent became concerned that the Franklin County Child Support Enforcement Agency ("FCCSEA") might prosecute if the husband was laid off and was unable to make his payments. Respondent's clients paid him a $3,500 flat fee, for which respondent anticipated that he would try to negotiate a compromise with FCCSEA and, if they could not reach an agreement, he would defend against what he believed was an inevitable prosecution. Respondent went to Columbus, obtained the husband's divorce decree, and spoke with an FCCSEA investigator. The investigator assured respondent that as long as payments were made, the agency would not resort to aggressive enforcement.

{¶ 5} Thereafter, respondent calculated the child-support arrearage that his client owed. He discovered that the arrearage was actually far less than the FCCSEA had calculated. Respondent contacted the FCCSEA, and sometime later, FCCSEA notified respondent's clients of a child-support-arrearage reassessment and corresponding reduction in the required monthly payment. Respondent did not, however, file any formal request to reduce the husband's monthly child-support payments.

{¶ 6} Respondent took no further action and did not communicate with his clients from August 2000 until August 2001. In the meantime, on September 5, 2000, respondent began working as an assistant public defender in Montgomery County. The couple later attempted to contact respondent at his old office but learned that he no longer worked there. The clients eventually located respondent with relator's help.

{¶ 7} The couple met with respondent on February 1, 2002, at which time respondent introduced them to another attorney who was experienced in matters of child support. The attorney agreed to assist the couple, and respondent offered to pay the new attorney from the fees already paid. The couple wrote a check for $154, apparently for the cost of filing a challenge against the amount set for the husband's monthly child-support payments; however, this check was never negotiated.

{¶ 8} Over the succeeding months, the couple tried to reach respondent but lost touch with him again. By August 2002, the wife had demanded the return of the couple's $3,500 and was threatening to report respondent to relator if he did not pay. Respondent then realized that the second attorney had not undertaken his client's representation, and he agreed to return the $3,500 as soon as he had the money.

{¶ 9} Respondent returned the $3,500 on May 7, 2004. After his work on the couple's case, the FCCSEA had recalculated the husband's child-support arrearage to be approximately $39,000. The agency later reduced that amount further, to $18,000, and the husband's monthly child-support payments were reduced commensurately.

{¶ 10} Although the husband's child-support payments were reduced without the necessity of a formal request, respondent conceded that he had not promptly filed the request. He explained that he had waited to file, thinking that FCCSEA would be more inclined to reduce the payments when the husband, who had returned to work within months of his layoff, was not working. Respondent claimed that after he became a public defender, he had asked the couple to come and see. him if the husband was ever laid off again. The client finally did so, according to respondent, on February 1, 2002.

{¶ 11} Adopting the panel's report, the board found that notwithstanding the other services performed on his clients' behalf, respondent had violated DR 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter) by failing to attend to his clients' specific wishes—to pursue a reduction of the child-support payments owed each month.

## Sanction

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating circumstances of respondent's case. See Section 10 of the Rules and Regulations Governing Procedures on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. The board noted that respondent has suffered since 1994 from depression and anxiety and that in 1995, he went on inactive status, his wife filed for divorce, and he lost his son in an auto accident. Respondent has not, however, asserted any mental

disorder as mitigating in the present case, and he has a history of professional discipline. Moreover, although respondent eventually repaid his client's retainer, the board found that respondent had not made restitution promptly.

{¶ 13} The board found, however, that respondent had not acted dishonestly or in his own interest, had not committed a pattern of misconduct, had not engaged in multiple offenses, and had not submitted false evidence. The board also found that respondent had cooperated in the disciplinary process and had acknowledged the wrongfulness of his conduct. Moreover, because the child-support payments had ultimately been reduced and respondent had returned the fee he had been paid, the board found that respondent's clients had not been harmed financially. The board also considered mitigating respondent's forthright disclosure and deep remorse for his neglect.

{¶ 14} The board was particularly impressed with respondent's character evidence. Montgomery County Common Pleas Court Judges Michael T. Hall and John W. Kessler, both of whom are well acquainted with respondent's work as a public defender, attested to his integrity and professional competence. They described respondent as an ethical and moral person. Judge Hall further described respondent as an effective and efficient attorney, and Judge Kessler described him as an outstanding attorney. Both judges advocated for respondent's continued practice of law as being in the interest of their court and the administration of justice.

{¶ 15} Brian Weaver, a senior trial attorney in the Montgomery County Public Defender's Office, extolled respondent's effectiveness in representing criminal defendants. Weaver referred to respondent's work as invaluable and described him as having a reputation for honesty and ethics. Weaver also advocated against any actual suspension of respondent's license.

{¶ 16} Adopting the panel's recommendation, the board recommended that respondent be publicly reprimanded for his misconduct. Neither party objects to this sanction.

{¶ 17} Upon review, we agree that respondent violated DR 6–101(A)(3). The board's recommendation to publicly reprimand respondent, however, is insufficient to ensure that no other clients suffer from his inattention.

{¶ 18} Respondent is now practicing responsibly in a structured environment with supervision. Moreover, we are impressed with the witnesses' appeals for respondent's continued service to indigent criminal defendants and find this evidence particularly mitigating. Accord *Disciplinary Counsel v. Moore,* 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423. The combination of respondent's disciplinary record and current neglect, however, requires a sanction more exacting than a public reprimand.

{¶ 19} We find that the public interest is at once protected and served by a sanction that permits respondent to practice, but not without our specific oversight. Accordingly, respondent is hereby suspended from the practice of law for six months; however, the suspension is stayed on the condition that he commit no further misconduct. The stay will be lifted if respondent violates this condition. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

LANZINGER, J., dissents and would publicly reprimand respondent.

———————

Gary C. Schaengold, for relator.

Leppla Associates and Gary J. Leppla, for respondent.