OFFICE OF DISCIPLINARY COUNSEL *v.* MOORE.

[Cite as *Disciplinary Counsel v. Moore,*
**101 Ohio St.3d 261, 2004-Ohio-734.**]

(No. 2003–1120—Submitted September 24, 2003—Decided March 3, 2004.)

---

**Per Curiam.**

{¶ 1} Respondent, C. Michael Moore of Jackson, Ohio, Attorney Registration No. 0071174, was admitted to the Ohio bar in 1999. On December 9, 2002, relator, Disciplinary Counsel, filed a two-count complaint charging respondent with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation.

{¶ 2} As to the first count, the panel found that respondent had been appointed in September 2001 to defend a 28–year–old woman, one year his junior, who had been charged with various traffic offenses, including operating a motor vehicle

under the influence. On the day of his client's arraignment, respondent conferred with her for the first time in the courthouse library about the case. During their conversation, respondent intermittently commented on the size of his penis and on sexual positions in what he considered to be a flirtatious manner.

{¶ 3} Before the panel, respondent admitted that he had made very graphic remarks to his client about sexual positions women generally preferred. He also admitted having described the size of his penis as large enough to cause discomfort during sex. He denied, however, the client's claims that he also touched her inappropriately and made a variety of other offensive remarks.

{¶ 4} The client felt shocked and violated by respondent's unsolicited sexual remarks. She consulted her mother and employer about the incident, and on the advice of her employer's attorney, she reported respondent's conduct to the Vinton County Prosecuting Attorney and to relator. The prosecutor arranged for the client to secretly record the next conversation between her and respondent.

{¶ 5} That conversation took place in November 2001 in a courthouse hallway prior to a suppression hearing. After a brief exchange concerning when her case would be called, respondent again persisted in asking about his client's sexual experiences and preferences, and his remarks were recorded. Upon learning of the client's having reported him, respondent withdrew from the client's case. Since then, respondent has not been assigned to represent a female defendant.

{¶ 6} With respect to the first count, the panel found, as stipulated by the parties, that respondent had violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (engaging in conduct that adversely reflects on an attorney's fitness to practice law), and 5–101(A)(1) (improperly accepting professional employment where the attorney's personal interests may affect the exercise of professional judgment on a client's behalf).

{¶ 7} As to the second count of misconduct, the panel found, again as stipulated, that respondent had also violated DR 1–102(A)(6) and 5–101(A)(1) by having an extramarital affair with a client he was representing in matters relating to the custody and care of her two small children. Respondent agreed to represent this client, who was only 22 at the time, in September 2000. He successfully defended the client against a criminal charge of domestic violence. They later consummated a consensual sexual relationship and continued to see each other for months afterward. For at least some of that time, respondent also continued to represent the client's custody interests, and he conceded that he did not sufficiently advise his client of the potentially compromising effect that their relationship could have had on those interests.

{¶ 8} In recommending a sanction for this misconduct, the panel reviewed the mitigating and aggravating considerations listed in Section 10 of the Rules and

Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. As mitigating, the panel found that respondent had never before been the subject of disciplinary action and had cooperated fully in the disciplinary proceedings. The panel also considered the testimony of a county court judge, a municipal court judge before whom respondent regularly appeared, and the county prosecutor to whom the Count-I client had reported respondent's misconduct. All were convinced that respondent would not repeat his misconduct, that he was otherwise a capable and professional practitioner, and that his services would be seriously missed if he were suspended from practicing law. The panel found respondent's own expressions of sorrow and regret of particularly mitigating effect. Respondent apologized repeatedly at the hearing for his misconduct and the embarrassment he had caused his wife and other family members, his clients, and his profession. He assured the panel that he could not be any sorrier for his actions and promised that they would never be repeated.

{¶ 9} The panel recommended the sanction suggested jointly by the parties: a one-year suspension, all stayed. But the panel added one year of probation following the suspension and added the following conditions to the stay: that respondent be required (1) to seek treatment and counseling at his own expense from a medical professional approved by the Ohio Lawyers Assistance Program ("OLAP"), (2) to authorize the medical professional to report periodically to OLAP about the results of his treatment program, and (3) to refuse appointments to defend female clients until such appointments are approved by the medical professional treating respondent.

{¶ 10} The board adopted the panel's findings of misconduct but modified its recommendation. Because respondent's misconduct was "directed toward vulnerable female clients" while he was representing them on family matters, the board recommended that respondent be suspended from the practice of law for six months, with no portion of the suspension stayed.

{¶ 11} We agree that respondent violated DR 1–102(A)(5), 1–102(A)(6), and 5–101(A)(1) as found by the board. However, upon review, we find the panel's recommendation to be the more appropriate sanction.

{¶ 12} In objections to the board's recommendation, respondent cites Ohio precedent establishing that a public reprimand is the usual sanction for an attorney who engages in consensual romantic relations with a client during representation, provided that the client's interests were not harmed by the affair. *Disciplinary Counsel v. DiPietro* (1994), 71 Ohio St.3d 391, 643 N.E.2d 1145; *Disciplinary Counsel v. Paxton* (1993), 66 Ohio St.3d 163, 610 N.E.2d 979; *Disciplinary Counsel v. Ressing* (1990), 53 Ohio St.3d 265, 559 N.E.2d 1359. But here, as relator argues, only the conduct alleged in Count II was consensual.

Respondent's explicit advances toward the client in Count I were neither invited nor welcome. Moreover, both clients had expressed to respondent their concerns about retaining custody of their children, interests that the clients could have felt pressure to protect by acceding to respondent's advances or that a romantic relationship with respondent could have compromised.

{¶ 13} The Supreme Court of Wisconsin has held that an attorney's unsolicited advances toward a client warranted a 90–day suspension from the practice of law, explaining:

{¶ 14} "[T]he public must not be subjected to unsolicited sexual conduct by attorneys in the context of an attorney-client relationship. Frequently, the client is in some difficulty and, as a result, is particularly vulnerable to improper advances made by the attorney. The client rightfully looks upon the attorney as legal advisor, one who will act in the client's best interests. Often, a client will be reluctant to terminate representation in response to an attorney's improper conduct for fear of losing time and money already invested in the attorney's representation.

{¶ 15} "The attorney stands in a fiduciary relationship with the client and should exercise professional judgment 'solely for the benefit of the client and free of compromising influences and loyalties.' * * * By making unsolicited sexual advances to a client, an attorney perverts the very essence of the lawyer-client relationship. Such egregious conduct most certainly warrants discipline." *In re Disciplinary Proceedings Against Gibson* (1985), 124 Wis.2d 466, 474–475, 369 N.W.2d 695, appeal dismissed sub nom. *Gibson v. Bd. of Attorneys Professional Responsibility of Wisconsin* (1985), 474 U.S. 976, 106 S.Ct. 375, 88 L.Ed.2d 330.

{¶ 16} We completely concur in the views expressed in *Gibson*. In fact, when a court-appointed counsel in Ohio had sexual relations with his criminally charged client, we suspended his license to practice law for one year, holding:

{¶ 17} "The lawyer-client relation in a criminal matter is inherently unequal. The client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of dependence and vulnerability. The more vulnerable the client, the heavier is the obligation upon the attorney not to exploit the situation for his own advantage. Whether a client consents to or initiates sexual activity with the lawyer, the burden is on the lawyer to ensure that all attorney-client dealings remain on a professional level." *Disciplinary Counsel v. Booher* (1996), 75 Ohio St.3d 509, 510, 664 N.E.2d 522.

{¶ 18} Respondent did not meet this burden, and we denounce the misconduct in which he engaged. Moreover, we commend the client who reported his misconduct based, in part, on her hope that it would protect respondent's other clients from similar transgressions.

{¶ 19} However, we must also take into account evidence that significantly militates against an actual suspension in this case, the most compelling being the unwavering faith expressed by respondent's local judges and prosecuting attorney in respondent's zealousness and competence in representing his clients; respondent's own expression of remorse for his misconduct, including his sincere apologies to the clients and others; and respondent's assurances that he would never repeat the misconduct. The panel heard this evidence firsthand and was obviously moved enough to recommend against actual suspension, notwithstanding the gravity of respondent's actions. In a supplement to the record, respondent has also provided a preliminary report about his condition from his treating psychologist, whom he consulted on the panel's referral. The psychologist reported respondent's forthright participation in and commitment to his treatment program, as well as the psychologist's optimistic prognosis.

{¶ 20} For these reasons and because we are convinced that the panel's conditions, which we have slightly modified, will prevent a recurrence of any similar unethical behavior, we adopt the sanction recommended by the panel. Respondent is therefore suspended from the practice of law in Ohio for one year, with the suspension stayed, and respondent is placed on two years' probation under the following conditions: (1) respondent shall continue treatment and counseling at his own expense from a medical professional approved by OLAP, (2) respondent shall authorize the medical professional to make periodic reports to OLAP about the results of his treatment program, and (3) respondent shall refuse appointments to defend female clients until the medical professional treating respondent approves such representation. If respondent fails to comply with any of these conditions, the stay shall be lifted and respondent will serve the entire one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

MOYER, C.J., dissents.

---

**MOYER, C.J., dissenting.**

{¶ 21} I respectfully dissent from the majority decision with respect to the sanction it imposes on respondent. Respondent had been appointed to provide legal representation to a 28–year–old married mother of three who had been charged with criminal offenses. She informed respondent at their initial meeting on the day of her arraignment that she was having marital difficulty and was concerned about the possibility of losing custody of her children. Respondent responded by making repeated sexual comments that the client found offensive

and that respondent thereafter conceded were raw, gross, unprofessional, and inappropriate.

{¶ 22} I agree with the board that respondent's comments to and conduct toward his client constituted sexual harassment. Moreover, respondent's improper conduct toward this client was not an isolated incident. Respondent conceded that he had engaged in a sexually intimate conversation with another client while representing her in child-custody matters. This conversation led to a consensual sexual relationship between respondent and this client during his representation of her. The board concluded that misconduct "directed toward vulnerable female clients while representing them on marriage and family matters" should receive a stronger sanction than a stayed suspension. I agree.

{¶ 23} The board recommended a six-month actual suspension. I agree with the recommendation of the board that respondent should be actually suspended for six months. I would suspend respondent for one year with only six months of that suspension stayed on the conditions ordered by the majority.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter, L.P.A., and Geoffrey Stern, for respondent.