DISCIPLINARY COUNSEL v. CIRINCIONE.

[Cite as *Disciplinary Counsel v. Cirincione,*
102 Ohio St.3d 117, 2004-Ohio-1810.]

118

(No. 2003–1867—Submitted December 15, 2003—Decided April 28, 2004.)

---

**Per Curiam.**

{¶ 1} On December 9, 2002, relator, Disciplinary Counsel, filed a single-count complaint charging respondent, Ross Salvatore Cirincione of Garfield Heights, Ohio, Attorney Registration No. 0024774, with several violations of the Code of Professional Responsibility. Respondent answered, admitting some allegations and disputing others.

{¶ 2} On July 21, 2003, a panel of the Board of Commissioners on Grievances and Discipline conducted a hearing. At the hearing, the panel accepted the parties' stipulations of facts and exhibits and received testimony from several witnesses.

{¶ 3} The stipulations and evidence established that respondent was admitted to the practice of law in 1976 and thereafter practiced law. In May 1997, respondent met Tiffany Wayne, now known as Tiffany Antoniewicz. Shortly after they met, respondent engaged in sexual relations once with Tiffany. Thereafter, respondent developed a romantic obsession for Tiffany, although they did not continue any sexual relationship. From May 1997 through March 2001, respondent and Tiffany often spent time together. During this period, respondent gave Tiffany $11,000 in cash and other things of value and also acted as her legal counsel in several criminal and civil matters. In April 1998, Tiffany married Edward Antoniewicz.

{¶ 4} On numerous occasions between May 1997 and January 2001, Tiffany and Edward illegally obtained prescription drugs from pharmacies in northern Ohio. Respondent did not participate in this illegal activity. In October 1997, a grand jury indicted Edward and Tiffany for illegally obtaining prescription drugs. On this charge, another attorney represented Tiffany, and Tiffany was convicted of deception to obtain dangerous drugs and ordered to undergo treatment in lieu of a conviction.

{¶ 5} Respondent represented Edward in this criminal case, and Edward also received an order of treatment in lieu of a conviction. However, in November 1999, Edward went to prison for six months for a probation violation. Respondent represented Edward in this matter free of charge.

{¶ 6} After December 1999, Tiffany was charged in three criminal matters. Tiffany retained counsel in one case, an appointed attorney represented her on a second case, and respondent agreed to handle the third case for free. In May 2000, Tiffany pled guilty to the charges, and Cuyahoga County Common Pleas Court Judge Burt Griffin sentenced Tiffany to 18 months of incarceration. Tiffany entered prison in June 2000, and respondent provided approximately $500 to Tiffany while she was incarcerated. In August and September 2000, respondent appeared as counsel for Tiffany in a mayor's court and negotiated a plea in absentia to petty theft.

{¶ 7} In August 2000, at Tiffany's request, respondent prepared and filed in the Cuyahoga County Common Pleas Court a motion for judicial release of Tiffany from prison. Respondent did so free of charge.

{¶ 8} Around September 2000, at Tiffany's request, respondent located a house in Vermilion, Ohio, for Tiffany to live in upon her release from prison. The house was located outside Cuyahoga County. Respondent falsely told the landlord that the Vermilion house was for a client who was obtaining a divorce and moving from Michigan to Ohio. In October 2000, respondent wrote a letter to the landlord restating the rental terms and enclosing a money order for $900 from his own funds for the first month's rent.

{¶ 9} Thereafter, respondent, acting as Tiffany's attorney, drafted a lease for the house in Vermilion. Respondent drafted the lease as if it were for Tiffany and her sister, Renee Gangel. Gangel, however, lived in Parma and never intended to move to Vermilion.

{¶ 10} On November 3, 2000, respondent appeared with Tiffany before Judge Griffin for a hearing on the motion for judicial release. Judge Griffin granted judicial release for Tiffany on condition that (1) Tiffany live with her sister, Renee Gangel, (2) Tiffany not live with her husband Edward without permission of her probation officer, and (3) Tiffany not leave Cuyahoga County without her probation officer's permission. Both respondent and Tiffany agreed to and signed the judicial-release order.

{¶ 11} At the hearing on the motion for judicial release, respondent asserted that Tiffany was going to live with her sister, Renee. Respondent mentioned that Renee lived in Parma, but he also said that Renee and Tiffany might relocate to Lorain County. According to Judge Griffin's later testimony, the "living arrangement" that he imposed in the judicial-release order—that Tiffany would live with her sister and not her husband—"was absolutely crucial to her getting judicial release."

{¶ 12} Respondent understood that carrying out the plan to have Tiffany live in Vermilion would violate the court order because she would be living outside Cuyahoga County and she would not be living with her sister. Nonetheless,

respondent did not ask the court to modify its order, nor did he disclose to the court the arrangements made before the hearing to lease the house in Vermilion.

{¶ 13} On November 3, 2000, respondent gave Renee Gangel the Vermilion lease agreement and also gave her $900 of his own money for the December rent. At no time during or after the hearing did respondent ask Renee to return the written lease or the $900 he had given her for the Vermilion lease.

{¶ 14} In mid-November 2000, respondent learned that on November 4, Edward, who had been released from prison, and Tiffany drove to the Vermilion house. There they met with the landlord, signed the lease, and paid the landlord the $900 from respondent as rent. Although respondent learned that Tiffany had moved to Vermilion, he did not notify the court of his client's violations of the terms of her judicial release. Moreover, respondent continued to provide assistance to Tiffany after the move. He provided transportation for her to visit her probation officer in Cuyahoga County on at least three occasions as well as money for rent, telephone bills, and other living expenses. From November 2000 to April 2001, respondent spent several thousand dollars to cover Tiffany's expenses.

{¶ 15} On January 3, 2001, when respondent was driving Tiffany to the probation officer, Tiffany asked respondent to stop at a store. Once inside, she attempted to illegally obtain a prescription. After police stopped Tiffany, respondent advised police that he was her attorney. After consultation, Tiffany consented to a search of her Vermilion home, and police seized evidence from the home. Thereafter, respondent asked another attorney, Ronald James, to represent Tiffany. On a later date, police searched Tiffany's home again and seized additional evidence. After the second search, respondent contacted the police and was directed to have his client turn herself in. Based on respondent's advice, Tiffany turned herself in around January 20, 2001.

{¶ 16} Tiffany was charged with additional offenses, and attorney Ronald James represented her on these charges. In March 2001, Tiffany pled guilty to five counts of deception to obtain dangerous drugs, and in April, she was sentenced to one year in prison. In May 2001, respondent disclosed to members of a Lorain County drug task force the extent of his financial assistance to Tiffany between 1997 to 2001, including free housing in an apartment, money for the purchase of a car, money sent to her in prison, rent money for the Vermilion house, payment of telephone bills in Vermilion, Western Union money transfers, and periodic cash gifts.

{¶ 17} In October 2001, a grand jury indicted respondent for offenses relating to respondent's direct involvement in and failure to report Tiffany's violation of her judicial-release order. As a result of a plea agreement, one charge was dismissed and another charge was amended to a misdemeanor charge of failure to

report a crime. Respondent pled no contest, was found guilty, and was sentenced to three days in jail, which were suspended, and a fine of $50.

{¶ 18} The panel found that respondent had violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by misrepresenting Tiffany's situation to the Vermilion landlord, including who was paying the rent and other expenses, and by also misrepresenting to the common pleas court at the hearing on judicial release where Tiffany was going to live and with whom.

{¶ 19} The panel also found that respondent had violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice). In that regard, the panel found that respondent had "assisted Tiffany in violating the conditions of her judicial release" and also "made misrepresentations to the court during the judicial release hearing."

{¶ 20} The panel further found that respondent had violated DR 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law) because "Respondent maintained a continuing romantic relationship with his client."

{¶ 21} The panel also found that respondent's relationship with Tiffany and his actions on her behalf had constituted violations of DR 5–101(A)(1) (accepting employment when the attorney's professional judgment may reasonably be affected by the lawyer's personal interests), 5–103(B) (wrongfully providing financial assistance to a client aside from court costs and expenses of litigation), 7–102(A)(7) (counseling or assisting a client in conduct known to be illegal or fraudulent), and 7–102(B)(1) (failing to report a client's fraud to a tribunal). The panel, however, found that respondent's conviction for failing to report a crime did not establish a violation of DR 1–102(A)(3) (illegal conduct involving moral turpitude).

{¶ 22} As aggravating factors, the panel noted that "the violations continued for a significant period of time, and Respondent has neither admitted them nor expressed any remorse." In mitigation, the panel noted that respondent "is a long-time practitioner, and he has not been the subject of any previous disciplinary proceedings." Respondent also presented many letters of support from prominent citizens as well as extensive character evidence.

{¶ 23} Relator recommended a suspension of 18 months, with a six-month stay. The panel recommended that respondent be suspended from the practice of law for 12 months, with the last six months stayed on condition of compliance with Disciplinary Rules.

{¶ 24} The board adopted the findings of fact and conclusions of law of the panel and recommended that respondent be suspended from the practice of law

for 12 months, with six months stayed. The board also recommended that costs be taxed to respondent.

{¶ 25} We concur in the findings of the board concerning respondent's misconduct and its conclusion that he violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 5–101(A)(1), 5–103(B), 7–102(A)(7), and 7–102(B)(1). As the board found, respondent in his statements to the landlord had "misrepresented his situation, Tiffany's situation, why she needed to rent the property, and who was going to be paying the rent and other expenses." The board also found that in his representation of Tiffany before the common pleas court, respondent had "misrepresented Tiffany's intentions, insofar as he stated that she would be living in Parma with her sister, even though Respondent had already made arrangements for her to live in Vermilion with her husband." Further, the board noted that respondent had "assisted Tiffany in violating the conditions of her judicial release."

{¶ 26} Respondent's continued improper representation of Tiffany, while providing financial and other assistance to her, culminated in respondent's violation of DR 7–102(B)(1). In addition to assisting Tiffany in violating the judicial-release conditions, the board found that respondent "neither called upon her to rectify the situation nor reported the situation to the court."

{¶ 27} In considering the sanction to impose, we have compared respondent's cases with other cases. In *Disciplinary Counsel v. Lombardi*, 96 Ohio St.3d 54, 2002-Ohio-2990, 770 N.E.2d 1013, we imposed a two-year suspension, with 18 months stayed, for violations of DR 1–102(A)(5), 5–103(B), and 7–102(A)(7), and other violations. In *Lombardi*, an attorney assisted a client in evading a court order by providing improper financial assistance.

{¶ 28} In *Cincinnati Bar Assn. v. Nienaber* (1997), 80 Ohio St.3d 534, 687 N.E.2d 678, we imposed an indefinite suspension for violations of DR 1–102(A)(4) and (A)(5), as well as DR 7–102(A)(5), because an attorney made untrue representations to a court. In *Nienaber*, we noted that as to attorneys, "[w]e require complete candor with courts." Id. at 537, 687 N.E.2d 678. In *Disciplinary Counsel v. Heffernan* (1991), 58 Ohio St.3d 260, 569 N.E.2d 1027, we imposed a six-month suspension for a violation of DR 1–102(A)(5) and (A)(6). In *Heffernan*, an attorney subsequently learned that his client in a traffic case had falsely assumed the identity of his brother in court but did not notify the court of the fraud.

{¶ 29} In this case, we agree with the board's recommendation that respondent be suspended from the practice of law for 12 months with the final six months of that period stayed. Respondent knew at the time of the judicial-release hearing of his client's intention to live in Vermilion and not with her sister, yet said nothing when confronted with the court's conditions of judicial release. Moreover, respondent continued to assist her in violating the terms of her probation.

Nonetheless, we are not imposing a more severe sanction in view of respondent's strong character evidence and his otherwise unblemished record in the practice of law, many years of which were in public service representing government entities.

{¶ 30} Therefore, respondent is hereby suspended from the practice of law in Ohio for 12 months, but that suspension is stayed for six months on the condition that respondent violate no Disciplinary Rule during the period. If respondent violates the condition of this stay, the stay will be lifted and respondent will serve the entire period of the suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Robert Berger, Assistant Disciplinary Counsel, for relator.

Richard Koblentz and Craig Morice, for respondent.