AKRON BAR ASSOCIATION v. WILLIAMS.

[Cite as *Akron Bar Assn. v. Williams,* 104 Ohio St.3d 317, 2004-Ohio-6588.]

(No. 2004–1067—Submitted August 17, 2004—Decided December 15, 2004.)

———————

**Per Curiam.**

{¶ 1} Respondent, Douglas R. Williams of Akron, Ohio, Attorney Registration No. 0070716, was admitted to the practice of law in Ohio in 1999. On August 5,

2003, relator, Akron Bar Association, charged respondent with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

{¶ 2} The board found that after graduating from law school, respondent worked for an Akron law firm. While there, he represented a woman in a domestic relations case in which the custody of her children was at stake. Respondent left the law firm in August 2001 to enter private practice as a sole practitioner, retaining this woman as his client.

{¶ 3} In addition to the custody case, respondent defended his client in area municipal courts against charges for driving under the influence and driving with a suspended license. At the same time, respondent had sexual relations with his client at least ten times over the three-month period from May to August 2001. During their sexual relationship, respondent's client was in danger of losing custody of her children, had little, if any, money to pay for legal assistance, was struggling with drug use, and was in counseling for having attempted suicide. Respondent orchestrated their sexual relationship fully aware of his client's fragile emotional state and financial distress.

{¶ 4} The client testified that their sexual relationship began after respondent called on a Saturday morning to remind her to go to a parenting class ordered by the domestic relations court in which her children's custody case was pending. Respondent picked up the client under the pretext that he was taking her to the parenting class; however, to her surprise, he drove past the location of the class to a motel where he importuned his client for sex. The client, who had lost her job, consented to a sexual relationship with the understanding that in exchange respondent would not charge her for his legal services. The client felt that she had little alternative to this arrangement given her circumstances.

{¶ 5} Before the panel, respondent admitted to all of the conduct his client had related; however, he denied that he had accepted sexual favors in lieu of legal fees. In his defense, respondent pointed out that he had billed his client for his work after they had had sex. Upon further questioning, however, respondent conceded that he had billed his client only once and had not attempted to collect his fees.

{¶ 6} Shortly after she received respondent's bill, the client filed a grievance with relator, outlining the relationship with respondent. In describing the anguish that she had experienced because of her relationship, the client's testimony proved to the board that respondent had taken unconscionable advan-

tage of this beleaguered client. The board also found that in a deposition under oath, respondent had denied the relationship alleged by his client.

{¶ 7} When asked at the hearing why he had finally decided to tell the truth, respondent stated that after lying for two years in response to his client's grievance, he wanted to "come clean." Respondent acknowledged his wrongdoing, explaining that he had initially lied about it to protect his marriage, which was already unstable. After his marriage ended in late 2002, respondent said that he had continued to lie to protect his professional reputation, resolving only on the day before the hearing to reveal the truth.

{¶ 8} The parties agreed that respondent had violated DR 1–102(A)(4) (barring conduct involving fraud, deceit, dishonesty, or misrepresentation) and 1–102(A)(6) (barring conduct that adversely reflects on an attorney's fitness to practice law) and asked for dismissal of charges that he also violated DR 1–102(A)(3) (barring illegal conduct involving moral turpitude). The board, consistent with the panel's recommendation, dismissed the DR 1–102(A)(3) charge and found that respondent's sexual relationship with his vulnerable client and his deception violated DR 1–102(A)(4) and (6).

Sanction

{¶ 9} In recommending a sanction for this misconduct, the board reviewed the aggravating and mitigating factors in respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Most striking to the board was the aggravating effect of client vulnerability. BCGD Proc.Reg. 10(B)(1)(h). The board found that that respondent had preyed on his client, exploiting her emotional and financial weaknesses so that she could hardly reject his advances. Equally disturbing to the board was that respondent placed his credibility against his client's integrity and steadfastly denied their sexual relationship under oath.

{¶ 10} In mitigation, the board found that respondent had no previous record of misconduct, BCGD Proc.Reg. 10(B)(2)(a), admitted his conduct, BCGD Proc. Reg. 10(B)(2)(d), and apologized for his actions. As further mitigation evidence, respondent provided many reference letters to show his integrity and good character; however, the board gave the letters little weight because respondent had also lied about his misconduct to the authors.

{¶ 11} The parties jointly recommended that respondent receive a six-month suspension from the practice of law. Adopting the sanction recommended by the panel, however, the board recommended a two-year suspension, with the last 18 months stayed on the condition that respondent complete a professional counsel-

ing program committed to the ethical proprieties of the attorney-client relationship.

{¶ 12} Upon review, we agree that respondent violated DR 1–102(A)(4) and (6) as found by the board. We also agree that a two-year suspension, with the last 18 months conditionally stayed, is appropriate.

{¶ 13} " 'The attorney stands in a fiduciary relationship with the client and should exercise professional judgment "solely for the benefit of the client and free of compromising influences and loyalties." * * * By making unsolicited sexual advances to a client, an attorney perverts the very essence of the lawyer-client relationship. Such egregious conduct most certainly warrants discipline.' " *Disciplinary Counsel v. Moore,* 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, ¶ 15, quoting *In re Disciplinary Proceedings Against Gibson* (1985), 124 Wis.2d 466, 474–475, 369 N.W.2d 695.

{¶ 14} The attorney in *Moore* also consummated a sexual relationship with a vulnerable client. We suspended that attorney for one year, although we stayed the suspension on conditions, including a two-year probation for the attorney to participate in counseling. Our decision to stay the suspension resulted from compelling evidence presented in mitigation—the attorney's sincere contrition and apologies, his local legal community's expressions of support and confidence that the misconduct would not be repeated, and the attorney's eagerness to enter therapy.

{¶ 15} This case is more egregious. Not only did respondent take advantage of a vulnerable client, he lied under oath to hide his misdeeds. A violation of DR 1–102(A)(4) ordinarily demands an actual suspension of an attorney's license for an appropriate period. See, e.g., *Disciplinary Counsel v. Hutchins,* 102 Ohio St.3d 97, 2004-Ohio-1805, 807 N.E.2d 303, ¶ 32–33; *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, syllabus. And here, we see nothing that compares to the mitigating evidence of *Moore.* Respondent provided no credible character evidence because he obviously misled his colleagues and acquaintances to obtain their support.

{¶ 16} Accordingly, we adopt the board's recommended sanction. Respondent is suspended from the practice of law in Ohio for two years; however, the last 18 months of this suspension are stayed on the condition that respondent complete a professional counseling program committed to the ethical proprieties of the attorney-client relationship. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, F.E. SWEENEY, PFEIFER and O'DONNELL, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., dissent.

O'CONNOR, J., dissents and would suspend respondent for two years.

---

**MOYER, C.J., dissenting.**

{¶ 17} I respectfully dissent from the majority decision with respect to the sanction it imposes on respondent.

{¶ 18} Respondent had a sexual relationship with a client he was representing in a domestic relations case. The client was unemployed, receiving counseling for having attempted suicide, and struggling with drug use. She was in danger of losing custody of her children but lacked the funds needed to pay for legal assistance. She consented to the sexual relationship with respondent based on her understanding that in exchange respondent would not charge her legal fees. Respondent orchestrated the relationship with full knowledge of his client's desperate financial problems and fragile emotional state.

{¶ 19} Respondent then steadfastly denied their relationship in a deposition under oath. He continued to lie about his misconduct for two years.

{¶ 20} In *Cleveland Bar Assn. v. Feneli* (1999), 86 Ohio St.3d 102, 712 N.E.2d 119, we imposed an 18–month suspension, with only six months stayed, upon an attorney who had sexual relations with a client and proposed to reduce the fees owed to him in exchange for sexual favors. The lawyer in *Feneli* did not lie to conceal his misconduct and still he received a more severe sanction than the one the majority imposes upon respondent in this case.

{¶ 21} I would sanction respondent's exploitive and deceitful behavior by suspending him from the practice of law for two years with only one year stayed on the conditions imposed by the majority.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

---

Kandie L. Carson, John F. Martin, Joseph Kodish, and Dianne R. Newman, for relator.

Koblentz & Koblentz, Craig J. Morice, Richard Koblentz, and Bryan L. Penvose, for respondent.