DISCIPLINARY COUNSEL *v.* FREEMAN.

[Cite as *Disciplinary Counsel v. Freeman*,
106 Ohio St.3d 334, 2005-Ohio-5142.]

(No. 2005–0365—Submitted April 14, 2005—Decided October 12, 2005.)

───────────

**Per Curiam.**

{¶ 1} Respondent, Thomas Herbert Freeman, of Norwalk, Ohio, Attorney Registration No. 0007852, was admitted to the practice of law in Ohio in 1975.

{¶ 2} On December 1, 2003, relator, Disciplinary Counsel, charged respondent with violations of the Code of Professional Responsibility. The parties waived a hearing, and a panel of the Board of Commissioners on Grievances and Discipline considered the cause on the parties' joint stipulations of fact and misconduct. The panel made findings of fact and conclusions of law, which the board adopted, and a recommendation, which the board modified.

### Misconduct

{¶ 3} Consistent with the parties' stipulations, the board found that a young woman had retained respondent in February 2001 to defend her against serious criminal charges. At the time of her arrest, respondent's client was approximately 17 years and 11 months old. Three days after his client's 18th birthday and while he was still representing her, respondent paid the woman $150 to pose for photographs in various states of undress.

{¶ 4} In spring 2001, respondent drove his client to Medina, Ohio, for a scheduled court appearance. On their way home, respondent stopped to buy three shirts and a bra-and-panty set for his client. When the client asked whether she needed to repay him, respondent replied that the clothing was a gift.

{¶ 5} Some time later, respondent's client began to suspect that he had placed photographs of her on an internet website, and she feared that her boyfriend and others might see them. Respondent had not posted any of his client's pictures, but the possibility of public distribution caused his client to reveal the nature of their relationship to her mother. The client's mother called the police.

{¶ 6} In June 2001, some time after their attorney-client relationship ended, the client surreptitiously recorded a conversation with respondent at his home, using a police surveillance wire. On the recording, respondent offered his underage client alcohol. He also asked her to pose naked for photographs and solicited her to perform sex acts in exchange for specific amounts of money.

{¶ 7} Respondent admitted that he had taken nude photographs of his client during his representation. He also conceded that his client, who had just turned 18, possibly feared that she could not refuse his illicit requests without jeopardizing her defense.

{¶ 8} The board found evidence that respondent had violated DR 1–102(A)(6) (barring an attorney from conduct that adversely reflects on the lawyer's fitness to practice law) and 5–101(A)(1) (barring an attorney from accepting employment if the exercise of professional judgment on behalf of the client reasonably may be affected by the lawyer's financial, business, property, or personal interests).

## Sanction

{¶ 9} In recommending a sanction for this misconduct, the board reviewed the aggravating and mitigating circumstances, to which the parties also stipulated. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. In mitigation, the board found that respondent did not have a prior disciplinary record and had cooperated fully in the disciplinary process. He also had submitted several letters as evidence of positive character and reputation. The board did not specify any aggravating circumstances.

{¶ 10} As a sanction, relator suggested that respondent receive a six-month suspension with all six months stayed, and respondent did not object. The panel made this recommendation, but the board determined that an actual suspension was warranted by respondent's clear abuse of his position as an attorney and for importuning his young female client. Due to the gravity of this misconduct, the board recommended that respondent be suspended from the practice of law for six months.

## Review

{¶ 11} We agree with the board's finding that respondent violated DR 1–102(A)(6) and 5–101(A)(1). We also agree with the board's recommendation.

{¶ 12} We have denounced the patent impropriety of similar misconduct before. In *Disciplinary Counsel v. Booher* (1996), 75 Ohio St.3d 509, 664 N.E.2d 522, we suspended a lawyer's license to practice for one year because he had sex with his client while she was in jail. Admonishing the bar that having sexual relations

with a client, particularly while defending the client in a criminal case, is presumptively unethical, we said:

{¶ 13} "The lawyer-client relation in a criminal matter is inherently unequal. The client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of dependence and vulnerability. The more vulnerable the client, the heavier is the obligation upon the attorney not to exploit the situation for his own advantage. Whether a client consents to or initiates sexual activity with the lawyer, the burden is on the lawyer to ensure that all attorney-client dealings remain on a professional level. Respondent failed to meet that burden." Id. at 510, 664 N.E.2d 522.

{¶ 14} Thus, in *Akron Bar Assn. v. Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677, we suspended a lawyer's license to practice for two years, staying the last 18 months on conditions, because he engaged in a sexual relationship with a vulnerable client and lied about it under oath. And in *Cleveland Bar Assn. v. Feneli* (1999), 86 Ohio St.3d 102, 712 N.E.2d 119, a lawyer's sexual relationship with a client and proposal that she exchange sex for his legal fees warranted an 18-month suspension, with the final six months of the suspension stayed. Moreover, when a lawyer had a sexual relationship with a vulnerable client in *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, we conditionally stayed a one-year suspension of the lawyer's license, but also placed him on probation for two years.

{¶ 15} Respondent did not lie about his misconduct under oath as in *Williams*, but neither did he present significant mitigating evidence as in *Moore*. In *Moore*, the lawyer sincerely apologized for his transgressions, he was eager to enter therapy to ensure that his misconduct would not be repeated, and his legal community supported his continued practice of law for the public sector. Indeed, for the unconscionable advantage he took of his client, respondent offers nothing in the way of contrition or promises of rehabilitation. Moreover, of the letters recommending respondent's character, none explain why the authors continue to hold him in such high regard despite the truth of the allegations lodged against him.

{¶ 16} For these reasons, we impose an actual suspension for the public's protection. Respondent is therefore suspended from the practice of law in Ohio for six months. Costs are taxed to the respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., concurs in judgment only.

Jonathan Coughlan, Disciplinary Counsel, and Brian E. Shinn, Assistant Disciplinary Counsel, for relator.

Kettlewell & Kettlewell, L.L.C., Charles W. Kettlewell, and Charles J. Kettlewell, for respondent.