Collins & Scanlon, L.L.P., Thomas J. Scanlon, Tim L. Collins, and M. Scott Wilson, for appellant.

DISCIPLINARY COUNSEL *v.* KRIEGER

[Cite as *Disciplinary Counsel v. Krieger,*
108 Ohio St.3d 319, 2006-Ohio-1062.]

(No. 2005–1156—Submitted November 8, 2005—Decided March 22, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Jennifer Krieger, f.k.a. Jennifer Krieger Hughes, of Spring-boro, Ohio, Attorney Registration No. 0063961, was admitted to the practice of law in Ohio in 1994.

{¶ 2} On December 6, 2004, relator, Disciplinary Counsel, charged respondent in a two-count complaint with violations of the Code of Professional Responsibili-ty. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations, and made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 3} Count I of the complaint alleged that after having represented a juvenile as his public defender, respondent improperly provided financial support to her client while continuing to represent him on her own. Count II alleged that at the same time, respondent also engaged in an improper sexual relationship with her client.

{¶ 4} From July 2001 until February 12, 2004, respondent was employed as an assistant public defender by the office of the Montgomery County Public Defend-er. Around July 2001, respondent was appointed to represent Bradley Willough-by, then a 16–year–old boy, in proceedings in the Montgomery County Juvenile Court.

{¶ 5} While represented by respondent in July through September 2001, January through March 2002, and August through September 2002, Willoughby was held at the Montgomery County Juvenile Detention Center on charges of attempted felonious assault, felonious assault, assault, and receiving stolen prop-erty. After Willoughby's release on April 4, 2003, from the custody of the Department of Youth Services, respondent and Willoughby began to socialize regularly, and she began to assist him financially.

{¶ 6} Respondent and her client became intimate, according to her testimony, in August 2003, after Willoughby attained majority. Respondent eventually also became Willoughby's primary source of financial support. While engaged in this sexual and financially supportive relationship, respondent nevertheless continued to represent Willoughby, and she remained an assistant public defender until

February 2004. In fact, except for one case in which another assistant public defender was appointed, respondent served as Willoughby's lawyer until the end of 2003, representing him on her own in various criminal and other matters free of charge.

{¶ 7} For example, on July 24, 2003, Willoughby was charged with possession of drug paraphernalia and marijuana. With respondent acting as his attorney, Willoughby pleaded guilty to a reduced charge of disorderly conduct. He was placed on probation and fined. On August 19, 2003, respondent appeared on Willoughby's behalf after he was cited for failing to signal properly and for four other traffic-safety violations. With respondent's assistance, Willoughby pleaded guilty to the signaling violation, and the other four charges were dismissed.

{¶ 8} Respondent also appeared at an arraignment on October 14, 2003, after Willoughby had been cited for driving without a license, squealing tires, and playing his stereo too loudly. Her client ultimately pleaded guilty to the citations related to the license and stereo, and she was able to obtain a dismissal of the other charge. On December 9, 2003, respondent again represented Willoughby, this time at an arraignment after his arrest for a probation violation. Respondent later paid her client's fine and court costs.

{¶ 9} While defending Willoughby both as public defender and privately, respondent spent approximately $8,000 for his living expenses.

{¶ 10} In addition, respondent bought Willoughby several vehicles, including those that he was driving when charged with the previously cited traffic and criminal offenses. After Willoughby's arrests at various times, respondent also posted his bond in two Montgomery County Court cases for a total of $350, and she paid $200 in fines and costs in the Miami County Municipal Court.

{¶ 11} In July 2003, while vacationing in North Carolina with her husband and two children, respondent secretly paid for Willoughby and his friend to stay at a nearby lodging for three days at a cost of approximately $180. In July or August 2003, respondent also paid $125 for her client to stay for one week at a motel.

{¶ 12} In October 2003, Montgomery County Assistant Public Defender Brian Huelsman was appointed to defend Willoughby against a July 2003 petty theft charge. Shortly after the appointment, respondent consulted Huelsman about the case, and she continued to persistently intercede in Willoughby's defense. Respondent eventually admitted to Huelsman that she had previously posted bond for Willoughby.

{¶ 13} Huelsman reported respondent's overly attentive behavior to her supervisor. On December 17, 2003, the public defender and others confronted respondent with their suspicions that she was having sexual relations with a client.

Rather than admit the affair, respondent led her superiors to believe that she had merely given Willoughby financial assistance out of concern for his welfare.

{¶ 14} On January 12, 2004, respondent received a strongly worded written reprimand for improprieties with her client. In it, the public defender observed that respondent had continued to represent the young man despite loss of all objectivity, and he chastised her for providing monetary assistance to a client in "unheard of" amounts and acting well beyond the bounds of propriety for an appropriate attorney-client relationship. The public defender also registered his "serious concerns" about respondent's "propensity in the future to become involved with juvenile clients."

{¶ 15} As a result of respondent's actions, the public defender directed his staff to withdraw from all pending cases involving Willoughby and decline to represent him in the future. The public defender also barred Willoughby from the Public Defender's office and forbade respondent to represent him privately as long as she worked there. The public defender also quickly reassigned respondent, precluding her from any representation in the juvenile court.

{¶ 16} Despite these admonishments, respondent continued her financial support of and sexual relationship with Willoughby. But on February 10, 2004, respondent filed a report with the police, claiming that after she and Willoughby had argued about his cocaine use, Willoughby had terrorized and attempted to kill her.

{¶ 17} On February 12, 2004, the Montgomery County Public Defender advised respondent that she could resign or be placed on paid leave pending another investigation of her conduct. She immediately resigned.

{¶ 18} Based on respondent's police report, Willoughby was charged with felony counts of attempted murder, kidnapping, disruption of public service, and drug abuse and misdemeanor counts of assault and violation of a protective order. Following a jury trial, Willoughby was acquitted of attempted murder and kidnapping. He was convicted, however, of disruption of public service, drug abuse, assault, and violation of a protective order and was sentenced to 14 months of incarceration.

{¶ 19} As to Count I, the parties stipulated and the board found that respondent had improperly provided financial assistance to a client and thereby violated DR 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct that adversely reflects on fitness to practice), 5–101(A)(1) (prohibiting a lawyer from accepting employment when the lawyer's judgment on the client's behalf might be influenced by personal interests), and 5–103(B) (prohibiting a lawyer from providing financial assistance to a client for expenses other than litigation costs).

{¶ 20} As to Count II, the parties stipulated and the board found that respondent had engaged in an extended sexual relationship with a client and concealed that relationship from authorities in violation of DR 1–102(A)(4) (prohibiting conduct involving dishonesty, deceit, fraud, or misrepresentation), 1–102(A)(5), 1–102(A)(6), and 5–101(A)(1).

## Recommended Sanction

{¶ 21} In recommending a sanction for this misconduct, the panel and board weighed the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel and board found as mitigating that respondent had no prior disciplinary record and had cooperated during the disciplinary investigation and proceedings. BCGD Proc.Reg. 10(B)(2)(a) and (d). Moreover, respondent expressed her extreme embarrassment over her behavior and apologized for it, and she was forthcoming in her testimony.

{¶ 22} As aggravating features, the panel and board found that respondent had engaged in a pattern of misconduct by continuing in the sexual relationship with Willoughby and financially supporting him for months. BCGD Proc.Reg. 10(B)(1)(c). The panel and board also found Willoughby to be a vulnerable victim, at least in the beginning of his relationship with respondent. BCGD Proc.Reg. 10(B)(1)(h). Respondent explained to the panel that she had initially hoped to help Willoughby develop his talents and escape his poor upbringing and environment; however, she clearly lost her perspective over time.

{¶ 23} Relator proposed that respondent's law license be suspended for 24 months, with 12 months stayed. Respondent recommended that any suspension be stayed in its entirety. Adopting the panel's report, the board recommended that respondent be suspended from the practice of law for 18 months, with all 18 months stayed on these conditions: (1) that respondent continue in counseling with her therapist until released from treatment, (2) that respondent not represent any juvenile clients during the stayed suspension, and (3) that respondent commit no additional disciplinary violations during the stayed suspension.

## Review

{¶ 24} Relator objects to the board's recommended sanction, arguing that a conditionally stayed 18–month suspension would be too lenient. Relator challenges the board's failure to find that respondent's misconduct resulted from a selfish motive and that it harmed her vulnerable client, which are aggravating factors under BCGD Proc.Reg. 10(B)(1)(b) and (h). Relator also insists that the combination of respondent's sexual and financial relationship with Willoughby and her failure to disclose their affair when asked warrant an actual suspension.

{¶ 25} We agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 5–101(A)(1), and 5–103(B) as found by the board. We also sustain relator's objections and impose an actual suspension of respondent's license to practice law.

### Self-interest and Harm

{¶ 26} Respondent asserts that she initially created the relationship with Willoughby because he had so few prospects in the juvenile court system and life in general. Her client's disadvantaged background and youth, however, were part of what made him so vulnerable to her attention, and she was ethically bound to avoid personal entanglement or withdraw and allow competent and objective counsel to represent Willoughby. She did not. Respondent instead acted in pursuit of her own desires, in effect dating her client before yielding to what she claims were his advances.

{¶ 27} Respondent's good intentions before the degeneration of their attorney-client relationship do nothing to offset the fact that she allowed the affair and provided Willoughby financial support, at least in part, to sustain it. We therefore find as an aggravating factor that respondent's misconduct was motivated by self-interest.

{¶ 28} We also find as an aggravating factor that respondent's selfish behavior injured her vulnerable client. Although the relations in which respondent engaged with Willoughby were apparently consensual, the affair necessarily distorted respondent's objectivity in making decisions on his behalf. Moreover, respondent placed her client in a distinctly compromised situation by involving him in a sexual relationship while supposedly acting as his mentor and protector. Respondent's involvement and financial support further compromised Willoughby's interests in a more tangible way—by causing the public defender to refuse him representation.

### The Appropriate Sanction

{¶ 29} We have admonished lawyers many times for engaging in sexual conduct with clients with whom they had no sexual relationship prior to the representation. Most disturbing are cases in which a lawyer has had sex with a client while defending the client against criminal charges, see, e.g., *Disciplinary Counsel v. Booher* (1996), 75 Ohio St.3d 509, 664 N.E.2d 522 (one-year suspension), or has accepted sex in lieu of fees. See, e.g., *Cleveland Bar Assn. v. Feneli* (1999), 86 Ohio St.3d 102, 712 N.E.2d 119 (18–month suspension, with six months stayed). More recently, when a lawyer took sexual advantage of a vulnerable client and then lied about it under oath, we suspended the lawyer's license to practice for two years, with the last 18 months stayed on the condition that the lawyer submit to professional counseling. *Akron Bar Assn. v. Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677.

{¶ 30} In addition to *Booher* and *Williams,* the parties cite *Disciplinary Counsel v. Moore,* 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, and *Disciplinary Counsel v. Cirincione,* 102 Ohio St.3d 117, 2004-Ohio-1810, 807 N.E.2d 320. In *Moore,* we imposed a one-year license suspension because a lawyer had a sexual relationship with one vulnerable client and sexually harassed another. We stayed the suspension and placed the lawyer on probation, however, because of strong mitigation evidence, including a need for the lawyer's services in his small community and his promise not to represent female clients until authorized by his therapist.

{¶ 31} In *Cirincione,* a lawyer's romantic obsession with a female client led him, among other improprieties, to support her financially and to misrepresent facts to a court during a hearing to gain her judicial release from prison. We suspended that lawyer from practicing law for one year; however, we also conditionally stayed six months of his sanction based on the strength of mitigating factors—his long-time membership in the bar, lack of any prior disciplinary record, and extensive evidence of his character and competence apart from his misconduct.

{¶ 32} Relator also relies on authority establishing that an actual suspension is generally warranted, absent significant evidence of mitigating circumstances, when a lawyer acts deceitfully in violation of DR 1–102(A)(4). See *Disciplinary Counsel v. Markijohn,* 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24; and *Cincinnati Bar Assn. v. Statzer,* 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117. Finally, relator refers to our recent decision in *Disciplinary Counsel v. Freeman,* 106 Ohio St.3d 334, 2005-Ohio-5142, 835 N.E.2d 26, in which we suspended a lawyer's license for six months because he took nude photographs of an 18–year–old client while representing her against serious criminal charges and then continued to pursue her for sex after their attorney-client relationship ended.

{¶ 33} Many of the most objectionable elements in these precedents are implicated in respondent's sexual and financial relationship with her client. As in *Booher,* 75 Ohio St.3d 509, 664 N.E.2d 522, and *Moore,* 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, respondent took advantage of the "inherently unequal" balance of power between a criminal defense lawyer and his or her client by taking on Willoughby first as a boyfriend and then as a lover. By underwriting Willoughby's living expenses for months, giving him spending money, taking him on trips, and providing legal representation for free, respondent also in effect paid him to continue their relationship. Cf. *Feneli,* 86 Ohio St.3d 102, 712 N.E.2d 119; and *Cirincione,* 102 Ohio St.3d 117, 2004-Ohio-1810, 807 N.E.2d 320.

{¶ 34} Respondent was not under oath, but she nevertheless violated her charge as an assistant public defender when she concealed from her employer the

affair with Willoughby. Her silence impeded the public defender in providing competent and objective representation to this indigent defendant. Moreover, because of his youth and disadvantaged situation, respondent's client was among those whose interests are most at risk when the attorney-client relationship degenerates. Cf. *Williams,* 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677, and *Freeman,* 106 Ohio St.3d 334, 2005-Ohio-5142, 835 N.E.2d 26.

{¶ 35} As the board observed, none of the foregoing cases is precisely on point, but together they provide a framework for our determination. From this framework, we hold that respondent is even less qualified to practice law than was the lawyer in *Feneli.* Given the gravity of her misconduct and the additional aggravating circumstances we have found, her lack of a disciplinary record, contrition, cooperation, and character references do little to militate against a sanction at least as severe as the one we imposed in *Booher.* We thus also find, consistent with the sanction advocated by relator, that a two-year suspension, with one year stayed on conditions, is appropriate.

{¶ 36} Respondent is therefore suspended from the practice of law in Ohio for two years; however, the last year of this suspension is stayed on the following conditions: (1) that respondent continue in counseling with her therapist until released from treatment, (2) that respondent not represent any juvenile clients during the stayed suspension, and (3) that respondent not commit any further disciplinary violations during the stayed suspension. If respondent violates the conditions of this stay, the stay will be lifted, and respondent shall serve the entire two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., would suspend respondent for two years, with 18 months stayed.

––––––––––

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Gary C. Schaengold, for respondent.