Fischer, J., concurring in part and dissenting in part.
*109 {¶ 33} The sanction recommended by the Board of Professional Conduct, with the inclusion of conditions such as probation, is much improved from the previous discipline-by-consent agreement submitted to this court. I agree with the majority's position, however, that a two-year suspension, with the entire suspension stayed on the conditions recommended by the board, is an unsuitable sanction in this case. Although I agree with much of the majority's analysis, I believe that given the circumstances *414 of this case, a longer actual suspension of respondent Jason Allan Sarver's Ohio law license is warranted and is necessary to protect the public. Specifically, I find that a two-year suspension, with one year stayed on the conditions recommended by the board, would be a more appropriate sanction in this case. Therefore, I respectfully concur in part and dissent in part.
A. An Actual Suspension of One Year is Warranted
{¶ 34} I wholeheartedly agree with the majority that the board was incorrect to conclude that because Sarver's client, J.B., was not prejudiced in her criminal case, she was not harmed by Sarver's misconduct. See majority opinion at ¶ 28. And I further agree with the board and the majority that Sarver acted selfishly and with a dishonest motive.
{¶ 35} But I believe that Sarver's actions necessitate a longer actual suspension of his law license. Here, Sarver violated four professional-conduct rules stemming from his sexual relationship with his indigent female client, J.B.: Prof.Cond.R. 1.8(j), by engaging in sexual activity with a client; Prof.Cond.R. 8.4(b), by committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness; Prof.Cond.R. 8.4(c), by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and Prof.Cond.R. 8.4(d), by engaging in conduct that is prejudicial to the administration of justice.
{¶ 36} Generally, for many of these rule violations, including Prof.Cond.R. 1.8(j), whether an actual suspension is imposed depends on the facts of each case. See Disciplinary Counsel v. Detweiler , 135 Ohio St.3d 447, 2013-Ohio-1747, 989 N.E.2d 41, ¶ 17-20. However, when the violation of Prof.Cond.R. 1.8(j) involves an attorney and an indigent client, an actual suspension of an attorney's law license is warranted. See Disciplinary Counsel v. Krieger , 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765 (court-appointed attorney who engaged in a sexual relationship with her indigent juvenile client received a two-year suspension from the practice of law, with one year stayed on conditions); Disciplinary Counsel v. Booher , 75 Ohio St.3d 509, 664 N.E.2d 522 (1996) (court-appointed attorney who *110 engaged in sexual activity with his indigent client in the county jail received an actual one-year suspension from the practice of law).
{¶ 37} We have also held that when an attorney engages in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation, the attorney will serve an actual suspension from the practice of law. Disciplinary Counsel v. Fowerbaugh , 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. While we have tempered that sanction in cases presenting an isolated incident in an otherwise unblemished career, see, e.g. , Disciplinary Counsel v. Fumich , 116 Ohio St.3d 257, 2007-Ohio-6040, 878 N.E.2d 6, this is not such a case. Sarver made a series of poor decisions over the course of at least six months stemming from his selfish motives to engage in a sexual relationship with his indigent client.
{¶ 38} The majority correctly emphasizes that the consensual nature of the sexual relationship between Sarver and J.B. does not excuse or provide a defense for Sarver's misconduct. But even if consent were a mitigating factor, given the imbalance of power inherent in an attorney-client relationship, I question whether J.B.-who was heavily dependent on Sarver for help with navigating the criminal-justice system and maintaining her liberty-could have given adequate informed consent. See Prof.Cond.R. 1.8(j), Comment 17.
*415 {¶ 39} Furthermore, "[w]hether a client consents to or initiates sexual activity with the lawyer, the burden is on the lawyer to ensure that all attorney-client dealings remain on a professional level." Booher , 75 Ohio St.3d at 510, 664 N.E.2d 522. Here, it is apparent that Sarver did not meet his burden to maintain a professional relationship with J.B. Sarver immediately acted on J.B.'s request for help with her criminal case by contacting an assistant prosecuting attorney. The following day, Sarver met J.B. for drinks where they discussed her case and then proceeded to have sex in Sarver's vehicle. Sarver continued his sexual relationship with J.B., which included trespassing on the property of Sarver's neighbor to use the neighbor's hot tub. Sarver acted dishonestly and selfishly, and he continuously and repeatedly failed to maintain professionalism in his interactions with J.B.
{¶ 40} Perhaps the most disturbing behavior demonstrated by Sarver during this six-month period occurred when Sarver deceived the court at least three times. After establishing the attorney-client relationship with J.B., Sarver began a sexual relationship with her and then sought appointment by the court to serve as J.B.'s court-appointed, criminal-defense attorney. A court, in making appointments, must take into account "[t]he avoidance of conflicts of interest or other situations that may potentially delay timely completion of the case," Sup.R. 8(D)(4), and "[i]ntangible factors, including the court['s] * * * view of a potential appointee's commitment to providing timely, cost-effective, quality representation to each prospective client," Sup.R. 8(D)(5). By seeking to be appointed to J.B.'s *111 case and failing to disclose his relationship, Sarver misled the court as to his ability to adequately represent J.B. as her court-appointed, criminal-defense attorney. Making matters worse, Sarver continued his sexual relationship with J.B. after being appointed by the court and twice lied about the relationship to a caring judge when the judge expressed concern about the situation.
{¶ 41} While there are some mitigating factors in Sarver's favor, such as his lack of a disciplinary record, his cooperation with the board, and his character references, the mitigating factors do not outweigh Sarver's abhorrent behavior, boorish selfishness, and complete disregard for the legal profession. Sarver engaged in a sexual relationship with his indigent client who was facing serious felony charges, advised his client on how to evade authorities, and then misled and explicitly lied to the court about that relationship. As the majority correctly emphasizes, the most disturbing attorney-disciplinary cases are those in which a lawyer engages in sexual activity with a client while defending the client against criminal charges. Krieger , 108 Ohio St.3d 319, 2006-Ohio-1062, 843 N.E.2d 765, at ¶ 29. Given the facts of this case, I believe that this court should suspend Sarver from the practice of law in Ohio for two years, with one year of the suspension stayed on the conditions recommended by the board.
B. The Additional Conditions Will Help Ensure Protection of the Public
{¶ 42} While I believe that an actual one-year suspension of Sarver's law license is necessary to protect the public, I also believe that the board's newly recommended conditions will help to further protect the public.
{¶ 43} Originally, the board had accepted a discipline-by-consent agreement whereby disciplinary counsel and Sarver stipulated to a two-year suspension, fully stayed on just one condition-that Sarver not engage in further misconduct during those two years. This court specifically *416 rejected that recommended sanction and remanded the cause to the hardworking members of the board for further proceedings. I voted to reject the board's originally recommended sanction because that sanction did not adequately protect the public. 150 Ohio St.3d 1439, 2017-Ohio-7742, 82 N.E.3d 1173.
{¶ 44} Subsequently, the board again recommended that Sarver be suspended from the practice of law for two years, with the entire suspension conditionally stayed. The board included additional conditions that require Sarver to comply with his Ohio Lawyers Assistance Program ("OLAP") contract, take and pass the Multistate Professional Responsibility Exam, and, in addition to his normal continuing-legal-education ("CLE") requirements, complete 12 hours of CLE focused on professional ethics or relationships with clients. And most importantly, the conditions include a period of monitored probation under Gov.Bar R. V(21).
*112 {¶ 45} Under Gov.Bar R. V(21)(A), disciplinary counsel must appoint an attorney or attorneys to monitor Sarver's compliance with all of the conditions listed above. The monitoring attorney or attorneys must then file written, certified reports with disciplinary counsel regarding the status of Sarver's compliance with the conditions of his probation, see Gov.Bar R. V(21)(B)(2), and shall "[i]mmediately report " to disciplinary counsel any violation by Sarver of any condition of probation (emphasis added), Gov.Bar R. V(21)(B)(3). The written reports must be filed "at least quarterly or as otherwise determined" by disciplinary counsel. Gov.Bar R. V(21)(B)(2).
{¶ 46} Further, while on probation, Sarver must (1) have a personal meeting with the monitoring attorney or attorneys at least once a month during the first year and at least quarterly thereafter, unless required by the monitoring attorney or attorneys to have more frequent meetings; (2) provide the monitoring attorney or attorneys with a written release or waiver so that Sarver's compliance with the conditions concerning medical, psychological, or other treatment and his attendance at self-help programs may be verified; and (3) cooperate fully with the efforts of the monitoring attorney or attorneys. Gov.Bar R. V(21)(C). Significantly, Sarver's probation may be terminated only with this court's approval, see Gov.Bar R. V(21)(D), and disciplinary counsel must immediately investigate "any report of a violation of the conditions of probation" by Sarver and must move to revoke his probation if warranted (emphasis added), Gov.Bar R. V(21)(E).
{¶ 47} These additional requirements will protect the public far more effectively than the sanction originally recommended by the board, as Sarver will be forced to be in regular and repeated contact with both the monitoring attorney or attorneys and OLAP. The written release or waiver that Sarver signs will provide the monitoring attorney or attorneys access to Sarver's medical and mental-health information-a significant intrusion into Sarver's private life-to ensure that he is in compliance with the conditions of his probation. Sarver must also abide by the significant obligations placed on him by his contract with OLAP. Moreover, Sarver has the proverbial "sword of Damocles" of more time without his license "hanging over his head" if he violates any ethical duty or any of the conditions during the suspension period. In other words, this sanction will keep Sarver, in colloquial terms, "on a short leash" once he is able to return to practice. Indeed, these additional conditions on the stay of Sarver's suspension will better help to protect the public.
*417 C. Conclusion
{¶ 48} While I agree with much of the majority opinion and agree that the significant conditions attached to Sarver's suspension, specifically probation, will help protect the public more effectively than the board's previously recommended discipline-by-consent agreement, I believe that a longer actual suspension of *113 Sarver's Ohio law license is warranted. Therefore, I concur in part and dissent in part.
{¶ 49} I hope that in the future, this court will more often utilize probation, as was done in this case, as a means of protecting the citizens of Ohio from attorney misconduct.
O'Connor, C.J., and DeGenaro, J., concur in the foregoing opinion.